MATTER OF J——

## In EXCLUSION Proceedings

### A-10841893

*Decided by Board July 18, 1958*

*Commissioner's motion August 11, 1958*

*Decided by Board September 22, 1958 and January 6, 1959*

*Decided by Attorney General February 26, 1959*

**Expatriation—Section 349(a)(10) of 1952 act—Not established where primary purpose in remaining abroad was to fulfill *bona fide* business commitments—Presumption that departure or absence was to avoid military service is rebuttable.**

(1) Government's burden of proving expatriation by clear, convincing, and unequivocal evidence under section 349(a)(10) of the 1952 act is not met where prospective draftee, under notice to report for induction on May 29, 1951, establishes that his primary purpose in remaining in Mexico from January 1951 to May 1957 was to fulfill genuine business commitments and not because of reluctance to serve in the armed forces.

(2) Presumption in section 349(a)(10) that departure or absence was for purpose of avoiding military service is rebuttable and is applicable only to cases where there was a failure on or after December 24, 1952, to comply with a provision of the compulsory service law.

EXCLUDABLE:   Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22)]—
              Remained outside the United States to evade or avoid military service.
              Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—No immigrant visa.

### BEFORE THE BOARD
(July 18, 1958)

**Discussion:** This case is before us on appeal from a decision of the special inquiry officer dated August 16, 1957, holding the alien an expatriate under section 349(a)(10) [8 U.S.C. 1481(a)(10)], and excluding him on the above-stated grounds. Appellant acquired United States citizenship at birth on August 28, 1929, at Berkeley, California.

Appellant was classified I-A by his local draft board in the summer of 1950, but departed to Mexico on January 8, 1951, without obtaining draft board permission. Appellant remained in Mexico

78

from January 8, 1951, to May 15, 1957, when he applied for admission to the United States as a citizen.

Appellant was convicted on June 10, 1957, on a plea of guilty in the United States District Court, Northern District of California, of knowingly failing and neglecting to report for induction on May 29, 1951, contrary to section 12(a), Selective Service Act of 1948 [50 U.S.C. App. 462(a)]. Appellant was sentenced to 8 months' imprisonment and fined $5,000.

According to the record, appellant had previously been in the habit of making trips to Mexico for business (although the visits were not so prolonged); and appellant asserted that he applied for draft board permission to leave the United States and assumed it was granted, for he was granted similar permission in 1949. Moreover, several of appellant's trips to Mexico prior to 1951 were made on behalf of his father's pump company and in 1951 he established a factory in Mexico for the company, as previously planned. To this end, he obtained the necessary Mexican work permit and renewed it in succeeding years.

Appellant testified that the draft board induction order (notice of which came to him in Mexico after the date specified) intervened before he had finished his company duties and he sought a deferment via the American Embassy. Appellant asserted that before he could complete his work and return to the United States to join this country's armed forces, he was indicted for failure to report for induction and, consequently, did not attempt to reenter this country while the indictment was outstanding.

On May 31, 1957, as a result of his father's efforts, the indictment was dismissed to permit appellant to be inducted. However, appellant then being over 26 years of age he was no longer subject to the draft. On June 7, 1957, the court ordered the reinstatement of the indictment, with a conviction following on June 10, 1957.

Appellant testified that he has always considered Lafayette, California, as his permanent residence and took no steps to become a Mexican citizen while there. Appellant registered his child, born July 8, 1956, in Mexico, at the American Consulate at Monterrey as a United States citizen within 30 days after the birth. Appellant specifically testified that it was the necessity of attending to business interests, not a desire to evade and avoid military service, which kept him in Mexico from 1951 to 1957.

The special inquiry officer held that appellant was an expatriate for remaining outside the United States to evade or avoid military service from January 8, 1951, to May 15, 1957, with the loss of citizenship occurring under section 349(a)(10) of the Immigration and Nationality Act. The special inquiry officer stated, "Personal

expediency cannot suspend the operation of the statute and the applicant's belated appearance for induction into the armed forces."

The special inquiry officer specifically referred to the section 349 (a)(10) presumption that "departure from or absence from the United States was for the purpose of evading or avoiding" military service in this country in ruling that appellant had lost his United States citizenship. However, since appellant has furnished affirmative evidence that he went to Mexico in 1951 and remained there for business reasons, this statutory presumption is not controlling.

In support of his arguments against expatriation, counsel cites as controlling precedents *Perez* v. *Brownell*, 356 U.S. 44 (1958); *Trop* v. *Dulles*, 356 U.S. 86 (1958); and *Nishikawa* v. *Dulles*, 356 U.S. 129 (1958).

While the *Perez* case discusses expatriation in general, the case stands primarily for the principle that while the right to United States citizenship may be relinquished or abandoned, either by expressed language or by conduct amounting to renunciation, this loss of citizenship may be accomplished only voluntarily. The specific act of expatriation under consideration in the *Perez* case was that of voting in a foreign political election [section 401(e), Nationality Act of 1940].

The *Trop* case turned on the issue of desertion from the United States military forces as an act of expatriation [section 401(g), Nationality Act of 1940] and contains little on the general topic of loss of citizenship, except a restatement of the *Perez* holding.

On the other hand, in the *Nishikawa* case, the Supreme Court stated:

* * * the parties are agreed that when a citizenship claimant proves his birth in this country or acquisition of American citizenship in some other way, the burden is upon the Government to prove an act that shows expatriation by clear, convincing and unequivocal evidence. In *Gonzales* v. *Landon*, 350 U.S. 920, we held that the rule as to burden of proof in denaturalization cases applied to expatriation cases under section 401(j) of the Nationality Act of 1940. We now conclude that the same rule should govern cases under all the subsections of section 401.

Although the Government set up a *prima facie* case in support of its allegation of loss of citizenship (departure or remaining in Mexico for the purpose of evading or avoiding military service), appellant has produced substantial affirmative evidence that he had a *bona fide* business purpose for being in Mexico after January 8, 1951. Hence, the weight of the Government's proof of expatriation falls short of the "clear, convincing and unequivocal" evidence required by the *Gonzales* and *Nishikawa* cases.

Consequently, the Government has failed to support the burden of proof of expatriation. Appellant being a citizen is entitled to

immediate entry into this country and the appeal is accordingly sustained.

**Order:** It is hereby directed that the appeal be sustained.

**Discussion:** The appellant is a 28-year-old married male who was born in the United States on August 28, 1929, at Berkeley, California. He was found inadmissible on the above-stated grounds by a special inquiry officer, and on July 18, 1958, the Board sustained his appeal from the special inquiry officer's decision. The issue presented is whether the appellant lost United States citizenship by remaining outside the United States during a period of national emergency to avoid military service.

On January 8, 1951, the appellant left the United States for Mexico, allegedly for a short business visit. He was then 21 years old and had lived in this country at all times except for short visits to Mexico in 1948, 1949, and 1950. At the time that he left he was classified I–A by his local draft board and had been so classified for at least 6 months. He failed to receive permission to depart, stating in this regard that he had applied for that permission and had assumed that it would be granted as it had on a previous occasion in 1949 when he was absent for a period of 4 months.

On May 23, 1951, the appellant's attorney in Berkeley, California, addressed a letter to the local board advising of the appellant's address in Mexico, and further indicating that a request for deferment would follow. By letter dated May 28, 1951, a formal request for deferment was made, predicated upon the need for the appellant's services in Mexico in establishing, organizing, and managing a factory engaged in the manufacturing of pumps.

A notice of induction dated May 17, 1951, was mailed to the appellant at his address in Mexico directing that he report for induction on May 29, 1951. The appellant took no action upon receipt of the notice of induction. Thereafter, approximately 3 months after the request for deferment was made, *i.e.*, about the latter part of August or early part of September, the appellant, according to his testimony, learned of the denial of the request for deferment.

Notwithstanding the fact that as of the beginning of September the appellant had already been ordered to report for induction, and was fully aware of the denial of a request for deferment, he took no action to return to the United States. On the contrary, in October 1951, he conferred with American Embassy officials in Mexico City respecting a postponement of his induction. According to his testimony, he made representations that his company was in the process of moving its factory from Mexico City to Monterrey, and

that it was necessary to remain in Mexico to complete the company plans. He stated that his request was denied with the words, "I have interviewed thousands of boys in your same condition and I don't see why your case would be any different." Despite the rejection of this further request for intervention made by him upon Embassy officials, he made no effort to contact his local draft board thereafter, nor to return to the United States. When asked for an explanation, he testified, "I had intended to finish the installation of this plant, our factory, and then report in a short time thereafter, and the indictment intervened."

The indictment in question charged him with knowingly failing and neglecting to report for induction on May 29, 1951, in violation of section 12(a), Selective Service Act of 1948 (50 U.S.C. App. 462(a)). It was filed on November 14, 1951, approximately 5 months after he received notice to report for induction, at least 2 months after he had received notice of denial of any request for deferment, and approximately 1 month after the denial by American Embassy officials of his request for intervention.

The appellant continued to reside in Mexico, registering as an alien in Mexico City on January 30, 1952, February 23, 1953, April 12, 1954, and December 14, 1954. Exhibit 4, *Documento Migratorio Unico Del Inmigrante*, page 19, reflects that on January 13, 1956, there was conferred upon him the status of an admitted immigrant in Mexico. The appellant's only explanation for accepting immigrant status in 1956 was that it was necessary in connection with his carrying on his work in Mexico, but that at no time did he intend to become a permanent resident of Mexico. His testimony throughout has been that he desired to return to the United States at all times.

It will be noted that shortly before assuming Mexican immigrant status in January of 1956, specifically on October 18, 1955, a certificate of loss of nationality of the United States was approved by the Department of State upon a finding that the appellant had expatriated under the provisions of section 349(a)(10) of the act.

It was not until May 15, 1957, more than 6 years from the date of his departure from the United States, and long after the termination of the hostilities in Korea, that the appellant sought reentry into the United States. He was paroled in, and the record reflects that the indictment was dismissed to permit him to be inducted. No induction took place, the indictment was reinstated, and on June 10, 1957, the appellant was convicted and sentenced to 8 months' imprisonment and a $5,000 fine. With respect to the failure to be inducted, there is evidence that the appellant was then over 26 years of age and no longer subject to the draft; that he signed a waiver

of the age limit, but for reasons not established by the record the draft board refused to accept him.

Under the provisions of section 349(a) (10), nationality is lost by

departing from or remaining outside of the jurisdiction of the United States in time of war or during a period declared by the President to be a period of national emergency for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States. For the purposes of this paragraph failure to comply with any provision of any compulsory service laws of the United States shall raise the presumption that the departure from or absence from the United States was for the purpose of evading or avoiding training or service in the military, air, or naval forces of the United States.

This provision, with the exception of the presumption set forth in the last sentence (and the reference to the air force), is identical with the predecessor legislation, section 401(j) of the Act of October 14, 1940, as amended September 27, 1944.

That the period of the Korean conflict was a "period of national emergency" within the meaning of the foregoing section is well established (*Matter of B——M——*, 6 I. & N. Dec. 756, 757, and cases cited therein).

The Board, in its order of July 18, 1958, found that since the appellant furnished affirmative evidence that he went to Mexico in 1951 and remained there for business reasons, the statutory presumption set forth in section 349(a) (10) is not controlling. While it is true that the presumption would have no effect with respect to a departure prior to the effective date of the Immigration and Nationality Act, nevertheless it has full force and effect with respect to conduct occurring after Deember 24, 1952 (*Matter of F——M——*, 6 I. & N. Dec. 379). In view of his conviction, it is clear that the appellant's continued absence after December 24, 1952, and up to May 15, 1957, brings him within the scope of the presumption. While the presumption is rebuttable, it is submitted that, for the reasons set forth below, the Government has fully met its burden of proving expatriation in the subject case, both under section 401 (j) of the Nationality Act of 1940, as amended, and under the provisions of section 349(a) (10) of the 1952 act with respect to the conduct after December 24, 1952.

The Service is fully mindful of the burden it carries in this type of case under the rule laid down in *Gonzales* v. *Landon*, 350 U.S. 920. However, Gonzales was taken to Mexico when less than 2 years old by his parents who were citizens of Mexico. During the 30 years he remained in Mexico thereafter, his father died and there was evidence he failed to return to the United States because his mother would not let him. It is obvious that on those facts satisfaction of the government burden was more difficult than in the instant case.

Here the appellant is an educated person of considerable means. He is fluent and literate both in English and in Spanish. He left the United States when he was 21 years of age. He not only was eligible for the draft, but had in fact registered and had been classified for several months in class I-A. He must reasonably have anticipated that induction was imminent. He was fully aware of the draft requirements respecting obtaining permission to leave the country, as evidenced by his prior requests for such permission, but nevertheless chose to depart without receiving such permission. He was at all times fully aware of his obligation to serve his country in a period of national emergency.

After his departure he received notice to report for induction. He chose to ignore this notice, on the plea that his business activities and the interests of the company by which he was employed were of more importance than the needs of this government. Following the denial of his request for deferment, his obvious duty was to terminate his activities in Mexico and return forthwith to the United States to present himself for military service. In lieu thereof, he continued to occupy himself with the factory in Mexico.

He pursued this willful course of conduct, notwithstanding a firm rejection by the United States Embassy in Mexico of his request to intervene to obtain a deferment for him. In short, notwithstanding that all of the facts respecting the nature of his employment in Mexico had been presented to the draft board through competent counsel and rejected, and notwithstanding the fact that United States officials on the scene in Mexico were not sufficiently impressed with the importance of his work to intervene in his behalf, he nevertheless took it upon himself to disregard the order of the draft board and to continue to remain in Mexico to pursue his business activities.

If the judgment of the draft board and of the United States Embassy is respected, there were no compelling reasons and no circumstances beyond his control barring his return at that time. Whether he was motivated in not returning at that time by fear of military service in an armed conflict or by a desire not to interrupt his business activities is of no consequence. The fact remains that when called to serve he deliberately remained abroad to avoid having to serve at that time and that he continued to remain abroad thereafter until 1957 in order to avoid military service, notwithstanding his desire to return and notwithstanding that no circumstances beyond his control prevented his return.

Clearly it was not for the appellant to say when he would serve in the armed forces, nor to impose conditions under which he would present himself to draft authorities. Subsequently, he imposed still another condition, namely, that the indictment which was finally

entered against him in November of 1951 for violation of the draft laws be withdrawn before he would return and serve in the armed forces of this country. The necessity for an indictment was brought upon the respondent by his own action in willfully failing to respond to the draft call. Having thus placed himself in the position where he was subject to a penalty, he can hardly be permitted to plead the very result of his misconduct as an excuse for failing to return and report for induction. The fact remains that by stipulating that the indictment against him must be withdrawn before he would return to the United States, and by continuing to remain out of this country until well after his 26th birthday, he avoided service during the period of actual hostilities, and ultimately circumvented any military service whatsoever. It is no excuse that he was willing to execute a waiver of the age requirement. Whether because he was over 26 years of age, or for other reasons not shown, the fact remains that by his actions he successfully evaded all military service.

It appears also that the appellant has sought to reap the benefits of lawful status both in Mexico and in the United States, as evidenced by his acceptance of immigrant status in Mexico in 1956. Certainly this action is inconsistent with, and casts doubts upon, his allegations that he was willing to return to the United States to serve in our armed forces.

Upon consideration of the record in its entirety, the Service is of the view that expatriation has been established by "clear, convincing and unequivocal" evidence. It is, therefore, moved that the Board reconsider its order of July 18, 1958, sustaining the appeal, and that the order of the special inquiry officer directing exclusion be affirmed.

*Motion is hereby made* that the Board reconsider its order of July 18, 1958, sustaining the appeal, and that the order of the special inquiry officer be affirmed.

**BEFORE THE BOARD**
(September 22, 1958)

**Discussion:** This case is before us on motion of the Immigration Service for reconsideration of our decision of July 18, 1958, in which we ruled that appellant was still a United States citizen, entitled to immediate entry into this country.

Appellant acquired United States citizenship at birth on August 28, 1929, at Berkeley, California. He was classified I–A by his local draft board in the summer of 1950, but departed to Mexico on January 8, 1951, without obtaining draft board permission. Appellant remained in Mexico from the latter date to May 15, 1957, when he applied for admission to the United States as a citizen.

On August 16, 1957, a special inquiry officer held appellant an expatriate under section 349(a)(10), for remaining outside the United States to evade or avoid military service between January 8, 1951, and May 15, 1957.

The Board determined on July 18, 1958, that "Although the Government set up a *prima facie* case in support of its allegation of loss of citizenship (departure or remaining in Mexico for the purpose of evading or avoiding military service), appellant has produced substantial affirmative evidence that he had a *bona fide* business purpose for being in Mexico after January 8, 1951. Hence, the weight of the Government's proof of expatriation falls short of the 'clear, convincing and unequivocal' evidence required."

The Immigration Service contends that the presumption set out in the last sentence of section 349(a)(10) applies and although the presumption is rebuttable, the burden of proof has been met by the Government. With regard to this presumption,[1] we must reiterate our previously-stated view that since appellant has furnished affirmative evidence that he went to Mexico in 1951 and remained there for business reasons, this statutory presumption is not controlling.

The Immigration Service argues that the facts of the instant case fall within the rule of *Gonzales* v. *Landon* [350 U.S. 920 (1955)], appellant being literate and educated, having knowledge of the English language, being over 21 years of age, and having had considerable United States residence. Moreover, the Immigration Service contends that:

* * * Whether he [appellant] was motivated in not returning at that time by fear of military service in an armed conflict or by a desire not to interrupt his business activities is of no consequence. The fact remains that when called to serve he deliberately remained abroad to avoid having to serve at that time and that he continued to remain abroad thereafter until 1957 in order to avoid military service, notwithstanding his desire to return and notwithstanding that no circumstances beyond his control prevented his return.

The heart of the issue in the instant case is appellant's motive in failing to return to the United States after January 1951. According to the record, appellant definitely had a valid business reason for going to Mexico in 1951 and remaining thereafter in that country. These genuine business commitments (on behalf of his father's pump company) constituted his primary purpose in remaining in Mexico, according to substantial affirmative evidence produced by appellant.

---

[1] SEC. 349(a)(10) * * * For the purposes of this paragraph failure to comply with any provision of any compulsory service laws of the United States shall raise the presumption that the departure from or absence from the United States was for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States.

Furthermore, certain other evidence tends to corroborate this view. Appellant had previously been in the habit of making trips to Mexico for business, although the visits were not so prolonged. Appellant asserted that he applied for draft board permission to leave the United States and assumed it was granted, for he was granted similar permission in 1949. Several of appellant's trips to Mexico prior to 1951 were also made on behalf of his father's pump company and in 1951 he established a factory in Mexico for the company, as previously planned. To this end, appellant obtained the necessary Mexican work permit and renewed it in succeeding years.

Appellant also testified that he has always considered Lafayette, California, as his permanent residence and took no steps to become a Mexican citizen while there. Appellant registered his child, born July 8, 1956, in Mexico, at the American Consulate at Monterrey as a United States citizen within 30 days after the birth.

For these reasons, we must reaffirm our conclusion that the weight of the Government's proof of expatriation falls short of the "clear, convincing and unequivocal" evidence required by *Gonzales* v. *Landon* [350 U.S. 920 (1955)] and *Nishikawa* v. *Dulles* [356 U.S. 129 (1958)]. The motion is accordingly denied.

**Order:** It is hereby directed that the motion be denied.

### BEFORE THE BOARD
(January 6, 1959)

**Discussion:** This case is before us on motion of the Service dated October 3, 1958, requesting that the case be certified to the Attorney General.

The appellant is a 29-year-old married male, native of the United States and claiming United States citizenship, who applied for admission to this country on May 15, 1957. The special inquiry officer held that he had lost his United States citizenship and that, as an alien, he was excludable on the two grounds stated above. On July 18, 1958, we held that he was a citizen and sustained his appeal. The Assistant Commissioner's motion for reconsideration of that decision was denied by this Board on September 22, 1958. The present motion dated October 3, 1958, requests that the case be certified to the Attorney General and advances additional arguments which we will discuss following a review of the facts.

The appellant's father is the general manager of Jacuzzi Brothers, Inc., a manufacturer of pumps in California. Commencing about 1946, the company contemplated establishing a plant in Mexico, and since 1948 the appellant has been involved in this venture. In this connection he made a few trips to Mexico and during 1949 received the permission of his Selective Service local board for a 4 months' trip to Mexico.

On January 8, 1951, subsequent to the date when the appellant was classified I–A by his local board, he again departed to Mexico. He stated that he requested permission of his local board to depart and assumed that it would again be granted. The appellant stated that he went to Mexico at that time for the purpose of establishing the contemplated Mexican branch of Jacuzzi Brothers and not for the purpose of avoiding United States military service. The Mexican factory was, in fact, established at about that time. During October 1951 it was transferred from Mexico City to Monterrey, Mexico, and the operation has continued successfully since that time. Approximately 200 workers are employed in the factory. The appellant has been in complete charge of the Mexican factory from January 1951 until his return to the United States in May 1957.

The appellant was ordered to report to his local board on May 29, 1951, for forwarding to an induction station for examination, but the notice reached him in Mexico subsequent to the appointed day. Jacuzzi Brothers requested an occupational deferment for the appellant on May 28, 1951. On November 14, 1951, he was indicted on 2 counts of violating the Selective Service Act of 1948. The appellant stated that between that time and May 15, 1957, when he returned voluntarily to the United States, a number of attempts were made by his attorney to have the indictment dismissed with a view of permitting him to enter the United States Army. On May 31, 1957, the indictment was dismissed and the appellant reported to his local board for induction. At that time he was over 26 years old and no longer subject to compulsory service but he signed a waiver as to that. However, he was not inducted. Subsequently, the court reinstated the indictment and on June 10, 1957, the appellant pleaded guilty to the second count which charged that he failed and neglected to report for induction on May 29, 1951.

The special inquiry officer held that the appellant became expatriated under section 349(a)(10) of the Immigration and Nationality Act (8 U.S.C. 1481(a)(10)) on the effective date of that act (December 24, 1952). The Assistant Commissioner's motion asserts that expatriation occurred either under that provision or under section 401(j) of the Nationality Act of 1940 (8 U.S.C. 801(j), 1946 ed.) which was in effect from September 27, 1944, until December 23, 1952. Both provided that a person who is a national of the United States shall lose his nationality by departing from or remaining outside of the jurisdiction of the United States in time of war or during a period of national emergency for the purpose of evading or avoiding military service. The provision which became effective on December 24, 1952 (8 U.S.C. 1481(a)(10)) contained, in addition, the statement that failure to comply with any provision of any compulsory service laws shall raise the presumption that

the departure from or absence from the United States was for the purpose of avoiding military service. In our decisions of July 18, 1958, and September 22, 1958, we stated that this presumption was not controlling here because the appellant had furnished affirmative evidence that he went to Mexico in 1951 and remained there for business reasons. We will discuss later herein the question of whether the presumption has any applicability to the appellant's case.

The special inquiry officer found that the appellant remained outside the United States to avoid military service and his conclusion of law was to the same effect. Hence, he presumably did not believe that the appellant departed from the United States for that purpose. In its motions, the Service did not comment specifically as to whether there was any allegation that the appellant's *departure* from the United States on January 8, 1951, was for the purpose of avoiding military service but the motion of October 3, 1958, does contain the statement that the appellant, in remaining outside the United States from 1951 to 1957, may have been motivated by an incidental desire "to avoid prosecution for departing to evade military service." However, neither count of the indictment accused him of having departed from the United States to evade military service. In the absence of any specific contention that the appellant became expatriated by departing from the United States and in view of our previous conclusion, we hold that the appellant did not *depart* for the purpose of avoiding military service, and the question resolves itself into whether he remained abroad for that purpose.

The Assistant Commissioner's motion of October 3, 1958, contains the statement that, after a full examination of the facts, the appellant's local board and American Embassy officials in Mexico "found that he had no business activities in Mexico urgently requiring his presence in that country." The record does not indicate that such findings were made. What it does show is that a request for occupational deferment was addressed to the local board on May 28, 1951 (the decision on this request does not appear of record but obviously it was not granted); that in October 1951 the appellant had a conference with 2 employees of the American Embassy in Mexico City; that he was endeavoring to procure their assistance in obtaining a Selective Service deferment of several months in order to permit completion of the Mexican factory; that he stated to them that as soon as the factory was completed he intended to enter the United States Army; and that they refused to take any action.

The motion of October 3, 1958, contains the statement that the appellant testified to a continuous desire to return to the United States following his departure in 1951, and it was indicated that

89

our decision in the case represented a departure by us from our previous view that expatriation occurs where the individual desires to return to the United States but is deterred primarily by reluctance to serve in the armed forces. Actually, when the appellant spoke of his desire to return to the United States, he did not say that he refrained from doing so because of reluctance to serve in the armed forces, but instead his answers were always coupled with the statement that he intended to return to the United States for the purpose of serving in the armed forces. His testimony is to the effect that he wanted a few months' deferment and then intended to enter the United States Army; that, following the indictment, efforts were made to have it dismissed in order that he might enter the Army; that he voluntarily returned to the United States on May 15, 1957, for the purpose of entering the armed forces; that he appeared before his local board for induction on May 31, 1957; and that he signed a waiver insofar as being over military age was concerned. Accordingly, the record does not show that the appellant refrained from returning to the United States because of reluctance to serve in the armed forces, and the conclusion which we reached in his case represents no departure from the view we had previously followed.

It was also stated in the motion of October 3, 1958, that the issue is whether United States citizenship was lost by one who remained abroad from January 8, 1951, to May 15, 1957, "primarily to avoid military service" although there may have been other incidental reasons. The motion concludes with the statement that the effect of the instant decision is to cast into confusion the long line of administrative decisions holding that it is of no consequence what other motivation may exist "if in fact the appellant remained outside of the United States primarily to avoid military service." If the facts were as stated by the Service, expatriation unquestionably would have occurred. However, the vulnerability of the Assistant Commissioner's entire argument is that the prop which supports it is the assumption of the Service that the appellant remained abroad *primarily* to avoid military service; whereas, we have held in our previous orders in this case that this fact has not been established.

The statutory provision under which it is asserted that the appellant became expatriated contains three elements applicable to his case: (1) remaining outside the jurisdiction of the United States, (2) during a period of national emergency, and (3) for the purpose of avoiding training and service in the armed forces. It is clear that the appellant's case contains elements (1) and (2). Hence, the question in the appellant's case is solely the factual issue of whether his action in remaining abroad was *for the purpose* of avoiding military service. This must be determined on the particular facts in his case which is an unusual one, involving as it does his presence in Mexico

for the purpose of establishing a subsidiary of an American company. Because of the peculiar circumstances of the case, we do not share the fears expressed by the Service that the decision here will cast into confusion our decisions in other cases involving entirely different facts.

We have carefully examined the special inquiry officer's decision and the two motions of the Service in order to ascertain what evidence is relied on to support the contention that the appellant remained abroad for the purpose of avoiding military service. As far as we have been able to determine, the only possible matters are (1) the indictment and conviction, (2) the presumption in 8 U.S.C. 1481(a)(10), and (3) the appellant's own testimony. The indictment and conviction are of no assistance in showing the appellant's purpose in remaining outside the United States for, as we have indicated above, the indictment did not accuse him of having departed from the United States to evade military service, nor did it accuse him of having remained abroad for that reason. The count to which he pleaded guilty charged only that he did knowingly fail and neglect to report for induction on May 29, 1951. It was immaterial to that charge whether there was a purpose to avoid military service or whether the failure to report for induction was for some other reason, and the question of whether the appellant was in the United States or in Mexico between 1951 and 1957 was equally immaterial in that prosecution.

The second item on which the Government relies is the presumption under 8 U.S.C. 1481(a)(10). We stated above that we would discuss the question of whether it had any applicability to the appellant's case. The opening phrase in 8 U.S.C. 1481(a), that is, "From and after the effective date of this chapter * * *," indicates clearly that paragraphs (1) to (10) of that subsection are prospective only. Paragraph (10), which relates to departing from or remaining outside the United States to avoid military service, contains a sentence reading: "(10) * * * For the purposes of this paragraph failure to comply with any provision of any compulsory service laws of the United States shall raise the presumption that the departure from or absence from the United States was for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States."

In *Matter of F——M——*, 6 I. & N. Dec. 379 (1954), we discussed 8 U.S.C. 1481(a)(10), and we specifically held that this provision had no retrospective force and that the presumption was limited to cases in which, on or after December 24, 1952, there was a failure to comply with a provision of a compulsory service law. It may be that the appellant failed to comply with such a provision after December 24, 1952, but the only "failure to comply" disclosed by the

present record is the appellant's failure to comply with the order to report for induction on May 29, 1951. Since this was prior to December 24, 1952, when 8 U.S.C. 1481(a)(10) became effective, it has not been established on the present record that the appellant's case is even within the presumption. In any event, assuming that the presumption is applicable, we adhere to our previous view that the appellant has overcome the presumption by affirmative evidence.

The third item on which the Government relies is the appellant's own testimony. No other witnesses testified. The Government's case must stand or fall on the basis of that testimony alone for we have indicated above that the record of conviction and the presumption contained in 8 U.S.C. 1481(a)(10) would not support a conclusion of expatriation. Since the appellant's own testimony must afford the principal support for the Government's case, we believe that his explanation of what might otherwise be considered adverse factors is entitled to considerable weight.

The appellant made no admission that he remained outside the United States for the purpose of avoiding military service. On the contrary, he testified that he did not depart from or remain outside the United States for the purpose of avoiding military service, and that he had desired a short deferment but intended thereafter to serve. He voluntarily returned to the United States on May 15, 1957, and his counsel had informed officials of the Service and of the Department of Justice of the date and place where he would apply for admission to the United States. He knew that the indictment was still outstanding at that time, and it was not until May 31, 1957, that it was dismissed. He did, in fact, appear before his local board for induction later on that date. In this state of the record, we do not believe that there is evidence that the appellant remained outside the United States for the purpose of avoiding military service. Hence, we hold that it has not been established by clear, convincing and unequivocal evidence that the appellant became expatriated in accordance with the rules laid down in *Gonzales* v. *Landon*, 350 U.S. 920 (1955); *Nishikawa* v. *Dulles*, 356 U.S. 129; *Trop* v. *Dulles*, 356 U.S. 86; and *Perez* v. *Brownell*, 356 U.S. 44, the latter three having been decided on March 31, 1958. We adhere to our previous conclusion that the appellant has established that his primary purpose in remaining in Mexico was to fulfill his business commitments on behalf of the Mexican subsidiary of Jacuzzi Brothers.

**Order:** It is ordered that no change be made in our previous orders in this case.

*It is further ordered* that, in accordance with the Assistant Commissioner's request, this case be certified to the Attorney General pursuant to 8 CFR 3.1(h)(1)(iii).

This case is before me for review of the decision of the Board of Immigration Appeals pursuant to 8 CFR 3.1(h)(1)(iii). The issue involved is whether the applicant lost citizenship under section 401(j) of the Nationality Act of 1940 or section 349(a)(10) of the Immigration and Nationality Act.

---

**Order:** After review of the record and of the applicable law and decisions of the United States Supreme Court, it is directed that the order of July 18, 1958, by the Board of Immigration Appeals, sustaining the appeal of J——B——J—— and directing his admission to the United States as a citizen, be approved.