Bierce, /., concurring in part and dissenting in part: I would have disallowed all the claimed deductions here involved, on the basis of the reasons and the judicial authorities set forth in my dissenting opinion in L. Lee Stanton, 34 T.C. 1. "While I agree with the result reached by the Court on the first issue, I believe that such result should have been attained through application of principles which are more fundamental and cogent than those noted in the Court’s opinion. As to the second issue, I feel impelled to disagree with the Court’s holding. The basic question here involved is, in my view, substantially the same as that involved in the Stanton case and in a multiplicity of other cases which have recently come before this and other courts (several of which cases are cited in my dissenting opinion in the Stanton case) — notwithstanding that there are variations of detail from case to case, as might be expected. Such basic question is: Whether a taxpayer may successfully contrive to reduce his potential income tax liabilities, at such times and by such amounts as he may elect, through employment of preconceived step-by-step transactions which are not entered into for any business purpose or personal purpose whatsoever, other than to avoid income taxes; which have no “economic reality”; which distort a true reflection of taxable income; and which, in substance, amount to nothing more than a “purchase” of tax deductions. I cannot believe that Congress ever intended that the Internal Bevenue Code which is designed to provide the Government with needed revenues, should be so construed as to bear within itself the means for frustrating such essential purpose — and thereby encourage what the above-mentioned cases have revealed to be a widespread practice of acquiring tax deductions at a relatively nominal price, through schemes and transactions which have no “economic reality.” I believe that (adopting the words of the Supreme Court in Gregory v. Helvering, 293 U.S. 465) “[t]o hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.” Also to hold otherwise might, in my view, seriously impair public confidence in our Federal income tax system, by giving implied approval to practices whereby particular taxpayers may practically “write their own tickets” as to income tax liabilities, through the adoption of artifice. The fundamental problem in all cases like the present is, not whether formalisms' and labels have been' meticulously observed, but rather, whether allowance of the claimed deductions, in circumstances such as are disclosed in the instant case, would conform with the intent, the spirit, and the purpose of our income tax statutes. 2. As regards the second issue in the instant case, the Court allowed deduction for the miscellaneous expenses incident to carrying out the plan which Glunts proposed — apparently on the ground that such miscellaneous expenses actually were incurred and paid. But the deductibility of expenditures depends on more than the mere incurrence or payment thereof. What actually occurred here was this: Glunts told petitioner’s president that he had a plan, whereby the corporation could obtain a deduction from income taxes which would be approximately equal to the amount of its intended yearend dividend. The substance of this plan was that such year-end dividend would be declared and paid in the form of an “interest in property” (in the nature of an equity interest in certain bonds) to be acquired for such purpose, rather than in the form of cash. Petitioner’s directors adopted such plan; and thereupon Glunts proceeded to handle all details pertaining to the acquisition and the distribution of such “property interest.” The miscellaneous expenses involved in the second issue herein, are in reality separate items of the overall package-cost of acquiring such “property interest,” and of taking all the indispensable steps in following the devious path which Glunts prescribed. But a corporation’s “cost” for property which it distributes in kind to its stockholders is not deductible. The situation is similar to that where a corporation purchases a parcel of real estate, and in connection therewith pays brokers’ commissions, recording fees, transfer taxes, and other miscellaneous expenses, which enter into its cost basis for such property; and where it then distributes such property in kind to its stockholders as a dividend. Certainly none of the items making up the overall cost of the property so distributed, would be deductible by the corporation at the time such dividend-in-kind is distributed. Also, there are other reasons why certain items of such miscellaneous expenses are not deductible. The largest item is the $1,000 fee paid to the Glunts company for “services rendered.” It would seem that the only section of the Code under which this item could possibly be deductible is section 162, relating to “ordinary and necessary expenses” incurred in “carrying on” the petitioner’s business. But the services of the Glunts company had no relation whatsoever to the operation of petitioner’s business of manufacturing rubber goods, or to the production of the income, or to any other phase of “carrying on” that business. Also, part of the item for “interest” is actually a broker’s fee of one-fourth per cent, for services in placing the so-called “Non-Purpose ‘Stock’ Collateral Time Loan”; and it is not an ordinary and necessary expense of carrying on petitioner’s business. And another item is the $85 expended for Federal documentary stamp taxes on the “resale” of the bonds. But such resale was made by James I). Glunts as an agent for the distributee-stock-holders, after the “property interests” in the bonds had been distributed as a dividend; and thus would appear to be an expenditure which was not even incurred for the benefit of the petitioner corporation. The Court’s reference to the Gregory case in connection with the second issue, seems inappropriate. The Gregory case did not involve any question relating to the deductibility of expenses; and what the Court has here attempted to do, is to hoist itself by its own bootstraps — first by conjecturing what the result would have been in the Gregory case if a deduction issue had there been involved, and then employing such conjectured result in arriving at a similar result in the instant case. Also the Court’s reference to Tank Truck Rentals v. Commissioner, 356 U.S. 30, seems inappropriate. That case did not involve a “no economic reality” tax avoidance scheme; and the facts and problems there presented are far afield from those presented in the instant case.