T.C. Memo. 2004-173


UNITED STATES TAX COURT


EDMAN AND DEBBIE KAY HACKWORTH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9786-02.                    Filed July 22, 2004.


<u>William H. Thomas III</u>, for petitioners.

<u>James R. Rich</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and penalties with respect to petitioners' Federal income taxes for 1998 and 1999 as follows:

| | | Penalties | |
| Year | Deficiency | Sec. 6662 | Sec. 6663 |
|------|-----------|-----------|-----------|
| 1998 | $31,816 | $4,063 | $8,627 |
| 1999 | 76,768 | 9,250 | 22,887 |

After concessions by the parties, the issue for decision is whether petitioners are entitled to a loss deduction for 1999 for the cash that petitioner Edman Hackworth forfeited to the State of South Carolina as a result of his violation of South Carolina's gambling laws.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time that the petition in this case was filed, petitioners resided in Greer, South Carolina.

### Background

During 1998 and 1999, petitioner Edman Hackworth (petitioner) owned and operated Sand Trap, Inc., an S corporation. Sand Trap, Inc., operated a bar named "Sand Trap Lounge" (the Sand Trap) in Greenville, South Carolina, during those years.

In December 1997, the Greenville County (South Carolina) Sheriff's Office (GCSO) began an investigation of petitioner based upon information that he was operating an illegal gambling business out of his residence and out of the Sand Trap. On or about July 27, 1999, GCSO began surveillance on the Sand Trap and on petitioners' residence. Between August 4 and September 2, 1999, a GCSO officer frequented the Sand Trap in an undercover capacity. While working undercover at the Sand Trap, this officer placed bets on various sporting events and observed other gambling and gambling-related activities. On or about August 28, 1999, GCSO officers collected several trash bags from the roadside in front of petitioners' residence. One of these trash bags was filled with used gambling paraphernalia and business records from petitioner's gambling operation.

On or about September 7, 1999, GCSO officers executed a search warrant on petitioners' residence. Petitioner was at home at the time that this search warrant was executed and was placed under arrest for bookmaking and setting up a lottery. Shortly after arresting petitioner, GCSO officers placed petitioner Debbie Kay Hackworth (Mrs. Hackworth) under arrest at one of her business locations for bookmaking and brought her back to petitioners' residence. Upon searching petitioners' residence, GCSO discovered, inter alia, (1) a betting room with seven telephone lines, tape-recording devices, two computers, and

gambling paraphernalia; (2) keys to petitioner's safety deposit box at Carolina First Bank; and (3) a total of $63,589 in cash, all of which was seized. The cash was discovered in the following amounts and locations in petitioners' residence: (1) $46,814 in a safe in the betting room; (2) $3,516 in the kitchen; (3) $1,259 in Mrs. Hackworth's purse; and (4) $12,000 in Mrs. Hackworth's closet in the master bedroom. Also on or about this date, GCSO officers executed a search warrant on the Sand Trap and discovered and seized gambling paraphernalia, $10,705 in cash from a back room safe, and $81 in cash from behind the bar that was part of a betting pool.

On or about September 8, 1999, GCSO officers executed a search warrant on petitioner's safety deposit box at Carolina First Bank and discovered and seized $90,900 in cash contained therein. With this seizure, GCSO had seized a total of $165,275 in cash from petitioners.

On September 30, 1999, petitioner voluntarily consented to forfeit to the State of South Carolina $152,016 of the cash that had been seized by GCSO in connection with his arrest and the execution of the search warrants described above by signing and dating a document entitled "CONSENT FORFEITURE OF MONIES DERIVED FROM GAMBLING" (consent form). The consent form provided, in pertinent part, as follows:

> Defendant's/respondent's property was seized as a
> result of an investigation and arrest of the defendant

> on SEPT. 09, 1999 for a violation of South Carolina Gambling Statutes.  The defendant was charged with ADVENTURING IN LOTTERY
>
> The parties now desire to enter into a compromise settlement to avoid litigation whereby the defendant agrees to voluntarily relinquish all rights and ownership to the defendant's property.
>
> IT IS THEREFORE ORDERED that the defendant's/respondent's property of $152,016.00 (ONE HUNDRED AND FIFTY-TWO THOUSAND AND SIXTEEN DOLLARS) in United States Currency be forfeited pursuant to sec. 16-19-80, Code of Laws of South Carolina (1976), as amended.

GCSO gave petitioner a form that explained the consent form. Also on this date, the $1,259 in cash that had been seized from Mrs. Hackworth's purse and the $12,000 in cash that had been seized from Mrs. Hackworth's closet were returned to petitioner.

On or about November 22, 1999, petitioner pleaded guilty to "Adventuring in lotteries" in violation of section 16-19-20 of the Code of Laws of South Carolina (1976).  In connection with petitioner's guilty plea, he was issued a citation and paid a $125 fine.

Petitioners' Income Tax Return for 1999

Petitioners' joint Federal income tax return for 1999 was due to be filed with the Internal Revenue Service (IRS) Center in Atlanta, Georgia, by October 16, 2000.  Petitioners did not file their 1999 return, however, until October 20, 2000.  Louis G. Manios prepared petitioners' 1999 return.

Petitioners attached three Schedules C, Profit or Loss From Business, to their 1999 return. The first two Schedules C related to businesses operated by Mrs. Hackworth. The third Schedule C related to petitioner's gambling activities. On his Schedule C, petitioner reported gross receipts of $178,236 from his gambling activities, which were referred to as "services" on this form. Petitioner also deducted $152,016 for "legal and professional services" on this form. This deduction was taken for the cash that petitioner forfeited to the State of South Carolina as a result of his violation of South Carolina's gambling laws.

In the statutory notice of deficiency sent to petitioners, in addition to the adjustments no longer contested, the IRS disallowed the $152,016 deduction claimed on petitioner's Schedule C. The IRS determined that petitioners had not established that any amount of this claimed deduction represented a deductible expense, was an ordinary and necessary business expense, or was expended for the purpose designated. Accordingly, the IRS increased petitioners' taxable income for 1999 by $152,016.

                              OPINION

Petitioners seek a deduction for the cash that petitioner voluntarily forfeited to the State of South Carolina under section 16-19-80 ("Forfeiture of wagers") of the Code of Laws of

South Carolina (1976) as a result of his violation of South Carolina's gambling laws. Petitioners have not argued that this deduction falls under section 162 as an ordinary and necessary business expense, so we rely on the general principle that a deduction for property forfeited under Federal or State forfeiture laws, if allowed at all, falls under the loss deduction provisions of section 165. See Fuller v. Commissioner, 213 F.2d 102, 105-106 (10th Cir. 1954), affg. 20 T.C. 308 (1953); Holmes Enters., Inc. v. Commissioner, 69 T.C. 114, 116-117 (1977); Holt v. Commissioner, 69 T.C. 75, 78-79 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980); see also Gambina v. Commissioner, 91 T.C. 826, 827 n.3 (1988); Bailey v. Commissioner, T.C. Memo. 1989-674, affd. without published opinion 929 F.2d 700 (6th Cir. 1991); Mack v. Commissioner, T.C. Memo. 1989-490; Farris v. Commissioner, T.C. Memo. 1985-346, affd. without published opinion 823 F.2d 1552 (9th Cir. 1987). Accordingly, we must decide whether petitioners are entitled to a loss deduction under section 165 for 1999.

Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction is limited to losses incurred in the individual's trade or business or in any transaction entered into for profit and to certain casualty losses. Sec. 165(c). The facts disclose that

petitioner was operating an illegal gambling enterprise in 1999. Thus, the deduction asserted by petitioners falls conceptually within the ambit of section 165(a) and (c)(1). Courts have consistently found that a loss deduction will be denied, however, where the deduction would frustrate a sharply defined Federal or State policy. See, e.g., Wood v. United States, 863 F.2d 417, 420-422 (5th Cir. 1989); United States v. Algemene Kunstzijde Unie, N.V., 226 F.2d 115, 119-120 (4th Cir. 1955); Fuller v. Commissioner, supra at 105-106; Blackman v. Commissioner, 88 T.C. 677, 682-683 (1987), affd. without published opinion 867 F.2d 605 (1st Cir. 1988); Holmes Enters., Inc. v. Commissioner, supra at 117-118; Holt v. Commissioner, supra at 79-81; Murillo v. Commissioner, T.C. Memo. 1998-13, affd. without published opinion 166 F.3d 1201 (2d Cir. 1998); Bailey v. Commissioner, supra; Mack v. Commissioner, supra; Farris v. Commissioner, supra; Hopka v. United States, 195 F. Supp. 474, 477-483 (N.D. Iowa 1961); see also King v. United States, 152 F.3d 1200, 1202 (9th Cir. 1998); Standard Oil Co. v. Commissioner, 129 F.2d 363, 370-371 (7th Cir. 1942), affg. 43 B.T.A. 973 (1941).

Respondent contends that petitioners should not be allowed a loss deduction for the cash that petitioner forfeited to the State of South Carolina because the allowance of such a deduction would frustrate South Carolina's sharply defined policy against illegal gambling. Petitioners assert, without citation of

authority, that respondent has the burden of proving by clear and convincing evidence that the "public policy exception" applies to deny the loss deduction for the cash that petitioner forfeited. Petitioners rely vaguely on the "legislative design under sec. 162". Neither the statutory language of section 165 nor the caselaw interpreting that section supports petitioners' proposition. In any event, the issue in this case is essentially legal, and the outcome does not depend on the burden of proof.

South Carolina had a sharply defined policy against illegal gambling in 1999 as expressed in its statutes and enforced by the GCSO. Petitioner acknowledged that the forfeiture was made pursuant to the laws of South Carolina and pleaded guilty. (Petitioner's claim that his consent to the forfeiture was "revoked" is uncorroborated and unpersuasive.) To allow petitioners a deduction for a loss arising out of petitioner's illegal activities would undermine South Carolina's policy by permitting a portion of the forfeiture to be borne by the Federal Government, thus taking the "sting" out of the forfeiture. See Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30, 35-36 (1958); Wood v. United States, supra at 422; Holt v. Commissioner, supra at 81; Murillo v. Commissioner, supra; Mack v. Commissioner, supra; Farris v. Commissioner, supra; Hopka v. United States, supra at 482-483. In accordance with these controlling precedents, petitioners are not entitled to a loss

deduction under section 165 for 1999 for the cash that petitioner forfeited to the State of South Carolina.

Petitioners contend that petitioner's forfeiture is invalid because it was disproportionate to his crime and violated the Eighth Amendment to the Constitution and, also, because it did not comply with the laws of South Carolina. Accordingly, petitioners conclude that they should be allowed a loss deduction for the cash that petitioner forfeited because the "public policy exception" applies only "when the underlying action by the government is legal and properly conducted by the state authorities under their own laws and the laws of the United States". Petitioners' contention as to the validity of the forfeiture, however, is not properly an issue in this Court. The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See sec. 7442; Naftel v. Commissioner, 85 T.C. 527, 529 (1985); see also Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 420, 422 (1943). This Court lacks jurisdiction over petitioners' collateral attack on the forfeiture.

Petitioners further contend that the damage done to South Carolina's policy against illegal gambling is outweighed by congressional intent that "business losses" be allowed to be deducted and that the income tax be imposed upon a taxpayer's net income. In support of this contention, petitioners cite Lilly v.

Commissioner, 343 U.S. 90 (1952); Commissioner v. Sullivan, 356 U.S. 27 (1958); Commissioner v. Tellier, 383 U.S. 687 (1966); Grossman & Sons, Inc. v. Commissioner, 48 T.C. 15 (1967); and Edwards v. Bromberg, 232 F.2d 107 (5th Cir. 1956). As we discuss below, petitioners' reliance on these cases is misplaced. Consequently, petitioners' contention is unpersuasive.

In Lilly v. Commissioner, supra, opticians sought to deduct payments that they made to eye doctors as ordinary and necessary business expenses. These payments were made pursuant to agreements that reflected an established and widespread practice in that industry whereby the eye doctors agreed to recommend their patients to certain opticians and the opticians agreed to pay those referring eye doctors one-third of the retail sales price that they received for the eyeglasses that they sold. The Court of Appeals for the Fourth Circuit held such payments nondeductible on the grounds that they were against public policy. The Supreme Court reversed, however, holding that the payments did not stand on the same basis as expenditures that violated some Federal or State law or that were incidental to such violations. The Court drew a distinction between these payments, which were at most professionally unethical, and outlawed expenditures, which, by virtue of their illegality, frustrated some sharply defined Federal or State policy.

Petitioner's proceeds from his illegal gambling enterprise were not akin to the payments in dispute in <u>Lilly</u>. The moneys seized from petitioner were presumptively the essence of his illegal venture. The forfeiture was incidental to petitioner's violation of South Carolina's gambling laws. Therefore, the holding in <u>Lilly</u> does not support petitioner's argument.

In <u>Commissioner v. Sullivan</u>, <u>supra</u>, the Supreme Court held that an illegal gambling enterprise is a business for Federal tax purposes and that deductions for ordinary and necessary business expenses involved in operating the enterprise were allowable. The Court reasoned that to deny such deductions would result in taxing the gross receipts of the business rather than its net income. In <u>Commissioner v. Tellier</u>, <u>supra</u>, the taxpayer sought a deduction for legal fees incurred in the unsuccessful defense of a criminal prosecution relating to his business. The Commissioner conceded that the fees were ordinary and necessary business expenses. The only question was whether the allowance of a deduction would frustrate public policy. The Supreme Court held that no public policy was frustrated by allowing these legal fees to be deducted as ordinary and necessary business expenses.

<u>Sullivan</u> and <u>Tellier</u> stand for the proposition that a taxpayer may be allowed to deduct legitimate (i.e., ordinary and necessary) business expenses in the operation of an illegitimate enterprise. That concept is not determinative in our analysis of

this case because we are dealing with a forfeiture that does not qualify as an ordinary and necessary business expense under section 162. Furthermore, the allowance of a loss deduction in this case would undermine the impact of South Carolina's sharply defined policy against illegal gambling. Accordingly, Sullivan and Tellier are inapposite.

In Grossman & Sons, Inc. v. Commissioner, supra, we considered a situation in which a taxpayer sought a deduction for the amount that it had paid to the United States in settlement of a proceeding under the False Claims Act, 31 U.S.C. secs. 231-233 (the 1952 version). After examining the record of the settlement negotiations and the settlement agreement between the United States and the taxpayer, we concluded that this payment was made to reimburse the Government for its damages for breach of contract and was not a penalty or forfeiture. We also examined the False Claims Act and concluded that the Act was partly remedial and compensatory in nature and partly punitive. Based upon that conclusion, we rejected the argument that no amounts paid or incurred in satisfaction of claims of the United States under the False Claims Act, whether by judgment or by settlement, were deductible because of public policy. Accordingly, we allowed the taxpayer to deduct the settlement amount as an ordinary and necessary business expense under the pre-1969 version of section 162.

In Grossman & Sons, Inc., the taxpayer settled a breach of contract dispute with the Government and was allowed to deduct the settlement amount as an ordinary and necessary business expense. Unlike the facts of Grossman & Sons, Inc., petitioner's "payment" (i.e., forfeiture) to the State of South Carolina resulted from his violation of South Carolina's gambling laws and not from a settlement of a breach of contract dispute.

In Edwards v. Bromberg, supra, the taxpayer sought a loss deduction for the theft of his money. The taxpayer had agreed to provide money to another individual in order to bet on a "fixed" horse race. The individual absconded with the taxpayer's money. After deciding that there was no scheme to defraud anyone except the taxpayer himself, the court allowed the deduction.

Bromberg is also distinguishable. Petitioner's funds were seized by the State of South Carolina in the enforcement of its gambling laws. The purpose of the seizure and forfeiture was to cripple petitioner's illegal gambling activities. If a loss deduction were allowed in this case, the Federal Government would in effect be carrying a portion of the loss inflicted on petitioners by the State of South Carolina because of petitioner's illegal activities.

Finally, petitioners contend that imposing a liability for Federal income taxes on the cash that petitioner forfeited without allowing a loss deduction for the forfeited amount

violates the Double Jeopardy Clause of the Fifth Amendment to the Constitution. In support of this contention, petitioners cite United States v. Halper, 490 U.S. 435 (1989).

The Double Jeopardy Clause protects individuals only against the imposition of multiple criminal punishments for the same offense. Hudson v. United States, 522 U.S. 93, 99 (1997) (abrogating United States v. Halper, supra, on this issue); see also Helvering v. Mitchell, 303 U.S. 391, 399 (1938). The imposition of a liability for a Federal income tax deficiency is remedial and is not a criminal punishment. See Ames v. Commissioner, 112 T.C. 304, 317 (1999); see also Ianniello v. Commissioner, 98 T.C. 165, 178-180 (1992); cf. McNichols v. Commissioner, 13 F.3d 432, 435-436 (1st Cir. 1993), affg. T.C. Memo. 1993-61. A fortiori, the denial of a deduction (i.e., the item that gave rise to the income tax deficiency in this case) is not a criminal punishment. See, e.g., Murillo v. Commissioner, T.C. Memo. 1998-13, affd. without published opinion 166 F.3d 1201 (2d Cir. 1998). Accordingly, denying petitioners a loss deduction for the cash that petitioner forfeited does not violate the Double Jeopardy Clause.

We have considered the arguments of the parties that were not specifically addressed in this opinion. Those arguments are either without merit or irrelevant to our decision.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>