TANK TRUCK RENTALS, INC., *v.*
COMMISSIONER OF INTERNAL REVENUE.

No. 109. Argued January 29–30, 1958.—Decided March 17, 1958.

*Leonard Sarner* argued the cause for petitioner. With him on the brief was *Paul A. Wolkin.*

*Solicitor General Rankin* argued the cause for respondent. With him on the brief were *Assistant Attorney General Rice, Joseph F. Goetten* and *Meyer Rothwacks.*

MR. JUSTICE CLARK delivered the opinion of the Court.

In 1951 petitioner Tank Truck Rentals paid several hundred fines imposed on it and its drivers for violations of state maximum weight laws. This case involves the deductibility of those payments as "ordinary and necessary" business expenses under § 23 (a)(1)(A) of the Internal Revenue Code of 1939.[1] Prior to 1950 the Commissioner had permitted such deductions,[2] but a change of policy that year[3] caused petitioner's expenditures to be disallowed. The Tax Court, reasoning that allowance of the deduction would frustrate sharply defined state policy expressed in the maximum weight laws, upheld the Commissioner. 26 T. C. 427. The Court of Appeals affirmed on the same ground, 242 F. 2d 14, and we granted

---

[1] "SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

"(a) EXPENSES.—

"(1) TRADE OR BUSINESS EXPENSES.—

"(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ." 53 Stat. 12, as amended, 56 Stat. 819.

[2] Letter ruling by Commissioner Helvering, dated September 10, 1942 (IT:P:2–WTL), 5 CCH 1950 Fed. Tax Rep. ¶ 6134.

[3] 1951—1 Cum. Bull. 15.

certiorari. 354 U. S. 920 (1957). In our view, the deductions properly were disallowed.

Petitioner, a Pennsylvania corporation, owns a fleet of tank trucks which it leases, with drivers, to motor carriers for transportation of bulk liquids. The lessees operate the trucks throughout Pennsylvania and the surrounding States of New Jersey, Ohio, Delaware, West Virginia, and Maryland, with nearly all the shipments originating or terminating in Pennsylvania. In 1951, the tax year in question, each of these States imposed maximum weight limits for motor vehicles operating on its highways.[4] Pennsylvania restricted truckers to 45,000 pounds, however, while the other States through which petitioner operated allowed maximum weights approximating 60,000 pounds. It is uncontested that trucking operations were so hindered by this situation that neither petitioner nor other bulk liquid truckers could operate profitably and also observe the Pennsylvania law. Petitioner's equipment consisted largely of 4,500- to 5,000-gallon tanks, and the industry rate structure generally was predicated on fully loaded use of equipment of that capacity. Yet only one of the commonly carried liquids weighed little enough that a fully loaded truck could satisfy the Pennsylvania statute. Operation of partially loaded trucks, however, not only would have created safety hazards, but also would have been economically impossible for any carrier so long as the rest of the industry continued capacity loading. And the industry as a whole could not operate on a partial load basis without driving shippers to competing forms

---

[4] Delaware, Del. Laws 1947, c. 86, § 2; Maryland, Flack's Md. Ann. Code, 1939 (1947 Cum. Supp.), Art. 66½, § 254, and Flack's Md. Ann. Code, 1951, Art. 66½, § 278; New Jersey, N. J. Rev. Stat., 1937, 39:3–84; Ohio, Page's Ohio Gen. Code Ann., 1938 (Cum. Pocket Supp. 1952), § 7248–1; Pennsylvania, Purdon's Pa. Stat. Ann., 1953, Tit. 75, § 453; West Virginia, W. Va. Code Ann., 1949, § 1546, and 1953 Cum. Supp., § 1721(463).

of transportation. The only other alternative, use of smaller tanks, also was commercially impracticable, not only because of initial replacement costs but even more so because of reduced revenue and increased operating expense, since the rates charged were based on the number of gallons transported per mile.

Confronted by this dilemma, the industry deliberately operated its trucks overweight in Pennsylvania in the hope, and at the calculated risk, of escaping the notice of the state and local police. This conduct also constituted willful violations in New Jersey, for reciprocity provisions of the New Jersey statute subjected trucks registered in Pennsylvania to Pennsylvania weight restrictions while traveling in New Jersey.[5] In the remainder of the States in which petitioner operated, it suffered overweight fines for several unintentional violations, such as those caused by temperature changes in transit. During the tax year 1951, petitioner paid a total of $41,060.84 in fines and costs for 718 willful and 28 innocent violations. Deduction of that amount in petitioner's 1951 tax return was disallowed by the Commissioner.

It is clear that the Congress intended the income tax laws "to tax earnings and profits less expenses and losses," *Higgins* v. *Smith,* 308 U. S. 473, 477 (1940), carrying out a broad basic policy of taxing "net, not . . . gross, income . . . ." *McDonald* v. *Commissioner,* 323 U. S. 57, 66–67 (1944). Equally well established is the rule that deductibility under § 23 (a)(1)(A) is limited to expenses that are both ordinary and necessary to carrying on the taxpayer's business. *Deputy* v. *du Pont,* 308 U. S. 488, 497 (1940). A finding of "necessity" cannot be made, however, if allowance of the deduction would frustrate sharply defined national or state policies proscribing particular types of conduct, evidenced by some govern-

---

[5] N. J. Rev. Stat., 1937 (Cum. Supp. 1948–1950), 39:3–84.3.

mental declaration thereof. *Commissioner* v. *Heininger*, 320 U. S. 467, 473 (1943); see *Lilly* v. *Commissioner*, 343 U. S. 90, 97 (1952). This rule was foreshadowed in *Textile Mills Securities Corp.* v. *Commissioner*, 314 U. S. 326 (1941), where the Court, finding no congressional intent to the contrary, upheld the validity of an income tax regulation reflecting an administrative distinction "between legitimate business expenses and those arising from that family of contracts to which the law has given no sanction." 314 U. S., at 339. Significant reference was made in *Heininger* to the very situation now before us; the Court stated, "Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment." 320 U. S., at 473.

Here we are concerned with the policy of several States "evidenced" by penal statutes enacted to protect their highways from damage and to insure the safety of all persons using them.[6] Petitioner and its drivers have violated these laws and have been sentenced to pay the fines here claimed as income tax deductions.[7] It is clear that assessment of the fines was punitive action and not a mere toll for use of the highways: the fines occurred only in the exceptional instance when the overweight run was detected by the police. Petitioner's failure to comply with the state laws obviously was based on a balancing of the

---

[6] Because state policy in this case was evidenced by specific legislation, it is unnecessary to decide whether the requisite "governmental declaration" might exist other than in an Act of the Legislature. See Schwartz, Business Expenses Contrary To Public Policy, 8 Tax L. Rev. 241, 248.

[7] Unlike the rest of the States, Pennsylvania imposed the fines on the driver rather than on the owner of the trucks. In each instance, however, the driver was petitioner's employee, and petitioner paid the fines as a matter of course, being bound to do so by its collective bargaining agreement with the union representing the drivers.

cost of compliance against the chance of detection. Such a course cannot be sanctioned, for judicial deference to state action requires, whenever possible, that a State not be thwarted in its policy. We will not presume that the Congress, in allowing deductions for income tax purposes, intended to encourage a business enterprise to violate the declared policy of a State. To allow the deduction sought here would but encourage continued violations of state law by increasing the odds in favor of noncompliance. This could only tend to destroy the effectiveness of the State's maximum weight laws.

This is not to say that the rule as to frustration of sharply defined national or state policies is to be viewed or applied in any absolute sense. "It has never been thought . . . that the mere fact that an expenditure bears a remote relation to an illegal act makes it nondeductible." *Commissioner* v. *Heininger, supra,* at 474. Although each case must turn on its own facts, *Jerry Rossman Corp.* v. *Commissioner,* 175 F. 2d 711, 713, the test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction. The flexibility of such a standard is necessary if we are to accommodate both the congressional intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy.

Certainly the frustration of state policy is most complete and direct when the expenditure for which deduction is sought is itself prohibited by statute. See *Boyle, Flagg & Seaman, Inc.,* v. *Commissioner,* 25 T. C. 43. If the expenditure is not itself an illegal act, but rather the payment of a penalty imposed by the State because of such an act, as in the present case, the frustration attendant upon deduction would be only slightly less remote, and would clearly fall within the line of disallowance. Deduction of fines and penalties uniformly has been held

to frustrate state policy in severe and direct fashion by reducing the "sting" of the penalty prescribed by the state legislature.[8]

There is no merit to petitioner's argument that the fines imposed here were not penalties at all, but merely a revenue toll. It is true that the Pennsylvania statute provides for purchase of a single-trip permit by an over-weighted trucker; that its provision for forcing removal of the excess weight at the discretion of the police authorities apparently was never enforced; and that the fines were devoted by statute to road repair within the municipality or township where the trucker was apprehended. Moreover, the Pennsylvania statute was amended in 1955,[9] raising the maximum weight restriction to 60,000 pounds, making mandatory the removal of the excess, and graduating the amount of the fine by the number of pounds that the truck was overweight. These considerations, however, do not change the fact that the truckers were fined by the State as a penal measure when and if they were apprehended by the police.

Finally, petitioner contends that deduction of the fines at least for the innocent violations will not frustrate state policy. But since the maximum weight statutes make no distinction between innocent and willful violators, state policy is as much thwarted in the one instance as in the other. Petitioner's reliance on *Jerry Rossman Corp.* v. *Commissioner, supra,* is misplaced. Deductions were

---

[8] See, *e. g., United States* v. *Jaffray,* 97 F. 2d 488, aff'd on other grounds, *sub nom. United States* v. *Bertelsen & Petersen Engineering Co.,* 306 U. S. 276 (1939); *Tunnel R. Co.* v. *Commissioner,* 61 F. 2d 166; *Chicago, R. I. & P. R. Co.* v. *Commissioner,* 47 F. 2d 990; *Burroughs Bldg. Material Co.* v. *Commissioner,* 47 F. 2d 178; *Great Northern R. Co.* v. *Commissioner,* 40 F. 2d 372; *Davenshire, Inc.,* v. *Commissioner,* 12 T. C. 958.

[9] Purdon's Pa. Stat. Ann., 1953 (1957 Cum. Ann. Pocket Part), Tit. 75, § 453.

allowed the taxpayer in that case for amounts inadvertently collected by him as OPA overcharges and then paid over to the Government, but the allowance was based on the fact that the Administrator, in applying the Act, had differentiated between willful and innocent violators. No such differentiation exists here, either in the application or the literal language of the state maximum weight laws.

*Affirmed.*