**Glen D. WOOD, Karen Kraak Wood, and Karen Eslinger Wood, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 88–3088.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1989.

Paul M. Predmore, Teresa E. McLaughlin, Gary R. Allen, Chief, William S. Rose, Jr., Jonathan S. Cohen, Appellate Sec., Asst. Attys. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before JOHNSON, JOLLY and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

At issue is the status as taxable income of, or the right to a loss deduction for proceeds from drug smuggling forfeited to the federal government. The district court ruled that the drug proceeds were taxable income, and that the Appellant was not entitled to a loss deduction on the forfeited property under 26 U.S.C. § 1341 or § 165 on statutory and public policy grounds. 693 F.Supp. 452. Finding no error in the district court's grant of summary judgment to the government, we affirm.

## BACKGROUND

In 1978 and 1979, Appellant Glen D. Wood[1] received commissions on marijuana that he handled.[2] He earned $168,000 in commissions in 1978 and $432,000 in 1979, or a total of $600,000. The money was eventually channelled into a real estate development project at Basalt, Colorado. In 1982, Wood began cooperating with a federal investigation, and in 1983, he pled guilty to conspiracy to import marijuana and importation of marijuana. He was sentenced to serve four years in prison and to pay a $30,000 fine. Wood has paid the fine and has been released after serving his sentence.

In 1984, Wood submitted a "Counter Letter in Lieu of Forfeiture Proceeding" admitting that his interest in the Basalt properties was directly traceable to his $600,000 in commissions from drug smuggling, and thus, that the property had been impressed at all times with a constructive trust in favor of the federal government. Under the terms of the letter, he turned over his interest in the property to the Government.

In 1985, the IRS conducted an audit of Wood's personal income tax returns. The IRS asserted deficiencies for 1978 and 1979 income tax that reflected a tax on the unreported drug proceeds. Wood consequently paid $309,551 in back taxes and $154,756 in additions to tax for fraud under 26 U.S.C. § 6653(b) as well as $271,249.53 in interest. Wood then filed administrative claims for refund with the IRS. The IRS denied the claims and Wood filed this suit for refund in the district court. The complaint sets out the amounts Wood asserts are due on some of his refund theories, but those are not at issue in this appeal.

On cross motions for summary judgment, the district court ruled that the proceeds were taxable income since Wood had exercised complete dominion and control over them in the taxable years, notwithstanding that they were later forfeited to the government. The district court denied a deduction under 26 U.S.C. § 1341 for taxes paid on income that was later determined to be subject to a superior claim of

---

1. Glen D. Wood's former and present wife are parties to this proceeding solely because they filed joint income tax returns with him for the relevant tax years.

2. The facts were stipulated by the parties.

right. The district court also denied a loss deduction under 26 U.S.C. § 165 on public policy grounds. Finally, the district court ruled that an Eighth Amendment claim was barred because it was not raised in the prior IRS proceeding. Wood appeals each of these rulings.

## I. DRUG PROCEEDS AS TAXABLE INCOME

■ We first consider whether the district court erred in including proceeds from drug smuggling as taxable income when the proceeds were forfeited to the federal government. Wood rests his claim regarding what is taxable income on an "estoppel" or "preclusion" argument. Section 61[3] of the federal tax code plainly defines gross income as "all income from whatever source derived." Wood concedes that the gains from illegal activities are just as taxable as gains from legal activities. *See James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1960) (overruling *Commissioner v. Wilcox*, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946)). Instead, Wood claims that prior cases are distinguishable because this is the first case where the IRS has imposed a tax on proceeds that were already forfeited to the government. The government, he asserts, is acting inconsistently when it secures title to property and then taxes that property. Wood's entire argument is summarized in his assertion that "to require such a result is fundamentally unfair." Wood asks this Court to forbid or preclude the government from acting in this way.

Yet, Wood's claim must fail, because the test for taxable income is not title. The test is actual dominion and control. In *James*, 366 U.S. at 219, 81 S.Ct. at 1055, the Supreme Court explained that a "gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'" (quoting *Rut-*

*kin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952)). There is no dispute that Wood exercised complete dominion and control over the proceeds from the drug smuggling. It does not matter that by operation of law all right and title vested in the government as soon as the money was earned. The government did not even know the proceeds existed until some years later.

Thus, it is not inconsistent to tax income for years in which it was of economic benefit to the taxpayer. Moreover, whether or not forfeiture proceedings have begun should not affect the determination whether particular income is taxable. Nor should the test for taxable income turn, as Wood argues, on whether a taxpayer had to forfeit the proceeds to the federal government rather than make restitution to other victims. *See James, supra* (an embezzler was required to include embezzled funds in his gross income in the year when the funds were misappropriated, notwithstanding that he might later have to make restitution to the victim). The legal test for taxable income is dominion and control, and that test in its terms excludes consideration of what happens to income after it flows from the taxpayer's hands.

There are of course statutory exemptions from taxable income. Wood admits there is no case law on point, but he requests this Court to carve out an exemption for ill-gotten proceeds that were already forfeited to the federal government and for which no taxes have yet been paid. Even if we thought such an exemption equitable, it is for Congress to carve out such exemptions, not the courts.

## II. LOSS DEDUCTION UNDER 26 U.S.C. § 1341

We next consider whether the district court erred in denying a deduction for the forfeited proceeds under 26 U.S.C. § 1341.[4]

---

3. All section cites are to 26 U.S.C., the Internal Revenue Code, unless otherwise indicated.

4. Section 1341 provides in relevant part that:
   (a) **General Rule.**—If—

   (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
   (2) a deduction is allowable for the taxable year because it was established after the close

The district court concluded that "[t]he case of *McKinney v. United States*, 574 F.2d 1240 (5th Cir.1978), makes it very clear that § 1341 cannot be used as authority to give plaintiff a deduction for a loss." (footnote omitted) In *McKinney*, this Court held that § 1341 could not be invoked to justify a refund where the taxpayer restored embezzled funds to his employer. The Court ruled that the initial statutory requirement that "it appeared that the taxpayer had an unrestricted right to such item" was not met.[5] *Id.* at 1243. Wood argues that *McKinney* can either be distinguished, or that it should be overruled.

Wood asserts that it appeared to him that he had an unrestricted right to the drug proceeds even though they were subject to forfeiture to the federal government. Although the embezzler in *McKinney* knew that the funds did not belong to him, Wood alleges he did not know of the common law forfeiture in effect at the time of his drug activity. Thus, Wood argues that the availability of § 1341 should turn on his knowledge, or lack thereof, that he had no right to the drug proceeds.

We are reluctant to hold that a wholly subjective test of a claim of right to ill-gotten gains governs § 1341(a)(1). Speculation on the grounds for Wood's claim of right to drug trafficking money[6] is, however, unnecessary, as his § 1341 claim is foreclosed for an additional reason.

Section 1341 only applies where the taxpayer is entitled to a deduction under another provision of the tax code. *United States v. Skelly Oil Co.*, 394 U.S. 678, 683, 89 S.Ct. 1379, 1382–83, 22 L.Ed.2d 642 (1969). Even if Wood prevailed on his theo-

ry that *McKinney* is distinguishable or must be overruled, he must then furnish another statutory source for a deduction. As will be seen, he cannot do this.[7]

### III. LOSS DEDUCTION UNDER 26 U.S.C. § 165

■ The district court ruled that the "forfeited money is properly classified as a loss under § 165[8]," but that "the loss must be disallowed due to the 'sharply defined national policy against the possession and sale of marijuana.'" (quoting *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 33–34, 78 S.Ct. 507, 510, 2 L.Ed.2d 562 (1958)).

Wood takes issue with this conclusion for three interrelated reasons. First, he relies on *James v. United States, supra,* which commented on the deductibility to an embezzler if funds were repaid to the victim:

We do not believe that Congress intended to treat a law-breaking taxpayer differently. Just as the honest taxpayer may deduct any amount repaid in the year in which the repayment is made, the Government points out that, "if, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income." (footnoted omitted)

366 U.S. at 220, 81 S.Ct. at 1056. Likewise, in *McKinney*, this court acknowledged that the embezzler was entitled to a loss deduction in the year he repaid the embezzled funds, 574 F.2d at 1241, even though the full benefit of § 1341 was not available to offset the actual taxes paid when he acquired the funds. Second, Wood suggests that if

---

of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
   (3) the amount of such deduction exceeds $3,000 ...

5. The Court's position in *McKinney* finds support in Treas.Reg. § 1.1341–1(a)(2) which provides in relevant part that:
For the purpose of this section "income included under a claim of right" means an item included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item.

6. Even if he had a claim to the proceeds, we might question whether it is "of right" any more than was McKinney's. Wood's failure to report the income on his 1978 and 1979 tax returns surely indicates some question in his mind about its status.

7. Allowance of the forfeited amounts as a trade or business expense is expressly barred by § 162(f) and 280E of the Code.

8. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."

public policy is not offended by allowing a loss deduction by an embezzler, it is likewise not offended where a drug trafficker who has forfeited his ill-gotten gains later claims a deduction. Finally, he boldly argues that permitting a deduction does not frustrate public policy against drug abuse because the forfeiture constituted a remedial civil sanction rather than a criminal penalty. We disagree with each of his arguments.

Initially, it must be observed that we are bound by a prior decision of this court, unless it conflicts with *James* or we overrule it *en banc*. In *Holt v. Commissioner*, 69 T.C. 75, *aff'd. per curiam*, 611 F.2d 1160 (5th Cir.1980), a marijuana dealer was not permitted to deduct the value of his truck, trailer and marijuana that were seized by the federal government. This court approved the reasoning that § 165 would otherwise apply, but that a loss deduction under the circumstances would frustrate a sharply defined national policy. 69 T.C. at 79–80. *See Tank Truck*, 356 U.S. at 33–34, 78 S.Ct. at 509. The only significant distinction suggested by Wood between *Holt* and the present case is that Wood has forfeited the assets acquired with drug money *and* paid income tax on the forfeited amount of income, while Holt assertedly did not pay tax on the forfeited assets. This distinction is specious. There is no suggestion in our prior opinion that Holt never paid income tax on the money with which he acquired the assets that were later forfeited. But for the interest and penalties that accrued from Wood's late payment of income tax on the 1978 and 1979 drug proceeds, Wood is in exactly the same tax position as Holt if no deduction is allowed.

Not only is *Holt* controlling, but upon reflection, *James* and *McKinney* appear irrelevant to a case predicated on a drug forfeiture. *James* asserted wholly in *dicta* that if a victim recovered embezzled funds, the embezzler would suffer a tax loss in the year of restitution. In *McKinney*, not-

withstanding a § 1341 issue decided by this court, the government did not contest the taxpayer's right to a loss deduction in the year of restitution. Neither of these cases considered the argument whether a sharply defined public policy enforced by fines or penalties would prohibit deductions for losses attributed to restitution payments. *Compare Waldman v. Commissioner*, 88 T.C. 1384 (1987), *aff'd.*, 850 F.2d 611 (9th Cir.1988). In neither case was there any discussion about the comparative tax consequences of voluntary or forced restitution by the embezzler. We decline to base a broad "public policy" ruling on the penumbras of *James* and *McKinney*, which lack any public policy discussion whatsoever.

Contrary to Wood's position, it is easy to sustain a public policy rationale for denying a loss deduction. Wood contends that because forfeiture is a civil rather than a criminal sanction, citing *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532 (5th Cir.1987), *cert. denied*, ─ U.S. ─, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988), a deduction will not offend public policy. He adds that he has paid his criminal debt by means of imprisonment and a $30,000 fine which he did not seek to deduct. It is obvious, however, that the public policy embodied in this nation's drug laws is not enhanced by allowing a tax deduction to offset a forfeiture. The distinction between the "civil" or "criminal" character of forfeiture is irrelevant here.[9] Forfeiture cannot seriously be considered anything other than an economic penalty for drug trafficking. *Holt* observed that "[t]he primary purpose of such forfeitures is to cripple illegal drug trafficking and narcotics activities by depriving narcotics peddlers of the operating tools of their trade." 69 T.C. at 80. The legislative history of 21 U.S.C. § 881 reveals that the forfeiture provision was designed to reach drug traffickers "where it hurts the most," 124 Cong.Rec. 36049 (1979), and to augment "the traditional criminal sanctions of fines and imprisonment." H.R.Rep. No. 98–1030, 98th Cong.,

---

**9.** *DKG Appaloosas, Inc., supra*, discussed only the extent to which a drug forfeiture is civil or criminal for the purposes of considering whether certain constitutional safeguards appropriate to criminal prosecutions would apply. Except for its bearing on, Wood's eighth amendment claim, which we do not reach, *DKG Appaloosas* is inapposite.

2d Sess. (1984), U.S.Code Cong. & Admin. News 1984, p. 3182.

The Supreme Court in *Tank Truck Rentals* enunciated a flexible test for allowance of deductions "to accommodate both the Congressional intent to tax only net income, and the presumption against Congressional intent to encourage violation of declared public policy." 356 U.S. at 35, 78 S.Ct. at 510. The Court declared:

> If the expenditure [sought to be deducted] is not itself an illegal act, but rather the payment of a penalty imposed by the State because of such an act, as in the present case, the frustration attendant upon deduction would be only slightly less remote, and would clearly fall within the line of disallowance. Deduction of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the "sting" of the penalty prescribed by the state legislature.

*Id.* Allowing a loss deduction would certainly "take the sting" out of a penalty intended to deter drug dealing.

## IV. EIGHTH AMENDMENT CLAIM

█ Wood's final contention is that having to pay taxes on the forfeited amounts, without receiving a loss deduction, violates the Eighth Amendment.[10] He must overcome the hurdle that he did not raise this issue in the IRS proceedings. To do so, he contends that the statute and regulations at issue are only intended to prevent a litigant from varying the factual bases of his administrative argument at trial. He states that here, the Commissioner has been apprised of the exact nature of his claim and the facts upon which it is advanced. But Wood cites cases that reflect one purpose of the statute and regulations without mentioning that the requirements of 26 U.S.C. § 7422 and Treas.Reg. § 301.6402–2(b)(1)[11] also inform the Government of the legal

grounds relied on. *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *Alabama By–Products Corp. v. Patterson*, 258 F.2d 892, 900–01 (5th Cir.1958).

It is the settled law of the Supreme Court and this Circuit that "[a]bsent a waiver by the government, a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund." *Mallette Bros. Const. Co., Inc. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983) (citing numerous prior cases). In *Alabama By–Products*, this Court explained the purpose of the rule precluding the raising of new issues in the courts of law:

> All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. *United States v. Garbutt Oil Co.*, 302 U.S. 528, [533], 58 S.Ct. 320, [323], 82 L.Ed. 405 [1938]. Anything not raised at that time cannot be raised later in a suit for refund. *Carmack v. Scofield*, 201 F.2d 360, 362 [5th Cir.1953] ...
>
> 'A taxpayer is not permitted to advance one ground for refund in his claim filed with the Commissioner and thereafter rely upon an entirely different ground in a subsequent suit for refund, *but is confined to the scope of the grounds for refund asserted in his claim filed with the Commissioner.*'

258 F.2d at 900–01 (quoting *Carmack*, 201 F.2d at 362) (emphasis in original).

We find the instructions and the reasoning of these cases dispositive. The Commissioner should have been given the opportunity to consider whether the forfei-

---

10. The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

11. Treas.Reg. § 301.6402–2(b)(1) provides, in pertinent part, as follows:

> No refund or credit will be allowed ... except upon one or more of the grounds set forth in a claim [properly] filed.... The claim must set forth in detail each ground upon which a credit or refund is claimed and the facts sufficient to apprise the Commissioner of the exact basis thereof....

ture law operating in tandem with the tax code constitutes a "fine". The Commissioner also should have been given the opportunity to consider whether such a "fine" was an "excessive fine" within the meaning of the Eighth Amendment. In truth, we do not know, nor could the Commissioner have assayed, the exact amount of any refund that would be due to Wood if he were to prevail on any of his refund theories. The record does not show how any disposition of this case would affect his Eighth Amendment claim. Accordingly, the district court properly refused to consider the merits of this constitutional claim.

For the foregoing reasons, we therefore AFFIRM the judgment of the district court.