Albert E. KING and Geraldine King, Husband and Wife, Plaintiffs,

v.

UNITED STATES of America, and its Internal Revenue Service, Defendant.

No. CS–95–0331–JLQ.

United States District Court, E.D. Washington.

July 2, 1996.

Richard Patrick Algeo, Spokane, WA, for Plaintiffs.

Paul W. Sharratt, U.S. Department of Justice, Tax Division, Washington, DC, and James P. Connelly, U.S. Attorney's Office, Spokane, WA, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Senior District Judge.

**BEFORE THE COURT** are the parties' Cross–Motions for Summary Judgment (Ct. Recs. 12, 19), heard with oral argument on June 21, 1996. Richard Algeo appeared on behalf of the Plaintiffs; United States Trial Attorney Paul Sharratt, Tax Division, appeared on behalf of the Government. Having reviewed the record, heard from counsel, and being fully advised on the matter, the Court hereby **GRANTS** the Government's Motion for the following reasons.

### FACTUAL AND PROCEDURAL BACKGROUND

The Kings were involved in a marijuana growing operation on their farm from 1989 to 1992. In early September 1992, the Spokane Regional Drug Task Force obtained a federal search warrant for the Kings' farm. (Ct.Rec. 25, p. 2.) At the time of the search, FBI agents seized 5,400 marijuana plants, 2,000 acres of land, five pieces of farm equipment, four vehicles, and $27,000 in cash. Later, on September 24, 1992, Mr. King showed three FBI agents the marijuana revenue, $636,940, which Mr. King had buried in two ammunition boxes in an area near his home. (Ct. Rec. 25, p. 3.) Neither party disputes that the $636,940 were proceeds from the marijuana operation.

On January 29, 1993, before Judge Nielsen, as part of a plea agreement, Mr. King entered guilty pleas to 1) conspiracy to manufacture and distribute marijuana and 2) subscribing to a false income tax return. According to the plea agreement, Mr. King agreed to voluntarily forfeit the $636,940 and other property, pursuant to 21 U.S.C. § 881(e)(1), waiving any right to trial concerning the forfeiture. Also pursuant to the plea agreement, Mr. King would file corrected amended tax returns for tax years 1989, 1990 and 1991 including the illegal income he had received and had not previously reported. The IRS determined that the Kings had received a total of $705,000 of illegal marijuana money from 1989–1992. This included the $636,940 which the Kings turned over to the FBI. The Kings reserved the right to claim an income tax credit for the $636,940, and the Government stated its intent to oppose such a claim.

On April 9, 1993, Mr. King was sentenced to 60 months imprisonment on the conspiracy charge and 12 months imprisonment on the false return charge, to run concurrently. This was a downward departure from a guideline range of 108–135 months, due to the Government's Motion in return for the Kings' substantial assistance. Also on April 9, 1993, the Kings submitted their 1992 tax returns, claiming the $636,940 marijuana proceeds as a prepayment credit for their 1992 tax liability. The IRS denied the prepayment credit. (Ct.Rec. 25, p. 6.) On May 25, 1993, the Kings submitted a formal protest to the IRS, which the IRS denied on September 28, 1993. On October 6, 1994, the Kings sent a check to the IRS for $410,383.34, the total tax the IRS determined was due for years 1989–1992.

The Kings filed this suit contending that 1) the $636,940 should count as a payment on their taxes, or 2) they should be allowed a loss deduction for the $636,940 that was forfeited, and 3) the forfeiture of the $636,940, without credit either as a payment or a loss deduction from the taxes constitutes an excessive fine under the Eighth Amendment. Mr. King also has a pending § 2255 Motion and two civil suits claiming double jeopardy violations for the forfeiture of the money and property and the prison sentence under *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994). Judge Nielsen stayed these claims, pending the Supreme Court decision in *United States v. Ursery*

and *United States v. $405,089.23 in United States Currency,* Nos. 95–345 & 95–346.

## DISCUSSION

### I. Subject Matter Jurisdiction

As a threshold matter, the Government contends the Plaintiffs have not met all the necessary conditions for maintaining a tax refund suit.

■ In order for a district court to have subject matter jurisdiction over a tax refund suit, the plaintiff must meet five conditions imposed by 28 U.S.C. § 1346(a)(1), I.R.C. § 7422(a), and judicial precedent: 1) full payment of the tax; 2) a valid credit claim filed with the IRS; 3) action on the claim by the IRS; 4) the suit for refund must be brought within two years of the IRS' denial; and 5) the suit for refund must have the same basis as the claim originally filed with the IRS. Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 58A.11 (1995).

The Government does not dispute that conditions 3, 4, and 5 have been met. However, the Government argues that prior to bringing this tax suit, 1) the Kings have not fully paid their taxes; or 2) if the Kings have paid their taxes, they have not filed a valid claim with the IRS. The Kings argue that they have met these requirements. The court finds that it has subject matter jurisdiction because the Kings have fulfilled all conditions necessary for bringing a tax refund suit.

### · A. Full Payment of the Tax

In *Flora v. United States,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), the Court interpreted 28 U.S.C. § 1346(a)(1) as requiring a full payment of the tax before a refund suit could be maintained in a federal district court. "Reargument has but fortified our view that § 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court." *Flora v. United States,* 362 U.S. 145, 177, 80 S.Ct. 630, 647, 4 L.Ed.2d 623 (1960). The Kings made a payment for the full amount of taxes, on October 6, 1994, when they sent a check to the IRS for $410,383.34 in order to cover their taxes from 1989 through 1992. The

Government does not dispute the legality of this payment, nor does it dispute that the $410,383.34 constitutes a full payment. Therefore, the requirement of full payment prior to bringing suit has been satisfied.

### B. Valid Claim of Refund with the IRS

■ Although not contesting that payment of the $410,383.34 was a full payment, the Government does contest the timing of the payment, claiming that in order to bring suit in this court, the Kings had to pay their taxes *prior to* filing a claim of refund with the IRS. No mandatory authority supports this contention.

The Government cites I.R.C. § 7422(a), *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), and *Tichman v. United States,* 79–2 U.S.Tax.Cas. Par. 9424, 1979 WL 1388 (SDNY 1979) as authority. However, I.R.C. § 7422(a) merely states that a refund claim must be filed with the IRS before bringing a refund suit into court. The Kings complied with this requirement. They filed their formal protest with the IRS on May 25, 1993. This event took place prior to the filing of the refund suit on August 22, 1995.

Although in *Dalm,* the Supreme Court held that the District Court lacked jurisdiction over Dalm's tax refund suit, that case is factually distinguishable. In *Dalm,* the plaintiff did not file a claim of refund within the statutory period of limitations provided in I.R.C. § 6511(a). The Court noted that Dalm "paid the gift tax on the 1976 transfer in December 1976.... Dalm did not file her claim for refund of the gift tax until November 1984, long after the limitations period expired." *United States v. Dalm,* 494 U.S. at 602, 110 S.Ct. at 1365. This situation differs from the present case, because the Kings filed their refund claim in 1993 and paid their full taxes in 1994. Unlike the plaintiff in *Dalm,* the Kings were not late in filing a claim with the IRS.

Additionally, *Dalm,* like I.R.C. § 7422(a), required the prior filing of an administrative refund claim before bringing suit in a district court. The Government attempts to use *Dalm* to support the proposition that a full

payment is required prior to filing a claim with the IRS. But the *Dalm* Court did not impose such a requirement.

The Government also cites *Tichman*, which supports the view that a claim for refund cannot be filed prior to full payment of the tax. In *Tichman*, the plaintiff "paid the sum in question to the IRS subsequent to the filing of his administrative refund claim. Therefore, the claim for a refund was not 'duly filed' within the meaning of [§ 7422(a)]." *Id.* at Par. 9424. However, *Tichman* is only persuasive authority, and not binding on this Court. More importantly, that case is factually distinguishable, because it dealt with a voluntary payment rather than an audit situation.

The Government further argues that the Kings made their loss deduction claim in the wrong year, because any loss occurred in 1993, rather than in 1992 when they tried to make the claim. However, this argument does not change the fact that the Kings fulfilled the jurisdictional prerequisites of paying the full tax and filing a claim with the IRS before suing in this court.

The court is satisfied that the Kings have complied with any requirements imposed by § 7422(a) and *Dalm.* Section 7422(a) and *Dalm* only require full payment of the tax prior to bringing suit in a court. Therefore, this court finds it has jurisdiction over the Kings' action.

## II. Summary Judgment Standard

The purpose of a summary judgment is to avoid unnecessary trials and expenses when no one disputes the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Viewing the evidence and inferences in favor of the nonmovant, the moving party is entitled to judgment as a matter of law where no genuine issues of material fact are in dispute. Fed.R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985).

In the present case, both parties agree that the $636,940 represents proceeds from drug activities. Both sides agree on all facts that have any bearing on the outcome of the issues involved. (Ct.Recs. 14 & 21) Therefore, a trial is not necessary to make factual determinations, and summary judgment is appropriate.

## III. The $636,940 as a Prepayment Credit or a Loss Deduction

The Kings argue that the $636,940 should be treated as either 1) a prepayment credit, or 2) a loss deduction. The court agrees with the Government's position that neither a prepayment credit nor a loss deduction can be allowed, because of federal drug laws and also public policy against drug trafficking.

### A. Prepayment Credit

First, the Kings forfeited all interest in the $636,940, and therefore could not use that money to pay income taxes. Section 881(a)(6) of 21 U.S.C. provides for the forfeiture, with no property rights retained in all money furnished in exchange for a controlled substance. Under this statute, the Kings have no property right in the $636,940. The drug proceeds would be subject to forfeiture even taking as true the Kings' contention that the three FBI agents who retrieved the hidden $636,940 were "as good as the IRS." (Ct.Rec. 14, p. 4.) Assuming this drug money went directly to the IRS, the Kings still could not claim a prepayment credit, because 21 U.S.C. § 881(a)(6) subjects drug proceeds to forfeiture.

Furthermore, Section 881(e) of 21 U.S.C. provides that property civilly or criminally forfeited to the Attorney General may be retained for official use, or may be transferred to any Federal agency or State or local law enforcement agency which participated directly in the seizure or forfeiture of the property. Under the plain words of this statute, no provision exists for using forfeited drug proceeds to pay income taxes. Therefore, the Kings cannot use the $636,940 as a prepayment credit.

### B. Loss Deduction

Next, the Kings argue that they should be allowed to claim a loss deduction under I.R.C. § 165 for voluntarily forfeiting the $636,940. There are no Ninth Circuit cases directly on point. However, courts

have consistently denied otherwise allowable loss deductions under I.R.C. § 165 for forfeited property and money associated with illegal drug transactions on the ground that to allow the deduction would frustrate a sharply defined public policy against trafficking in illegal drugs. *Wood v. United States,* 863 F.2d 417 (5th Cir.1989); *Holmes v. Commissioner,* 69 T.C. 114, 1977 WL 3651 (1977); *Holt v. Commissioner,* 69 T.C. 75, 1977 WL 3652 (1977), *aff'd per curiam,* 611 F.2d 1160 (5th Cir.1980).

The Fifth Circuit case of *Wood v. United States,* 863 F.2d 417 (5th Cir.1989) is nearly identical to this case factually. Although this Court is not bound by *Wood,* it finds the analysis of *Wood* to be persuasive. The Fifth Circuit found that the proceeds of an illegal drug transaction were taxable even though they had been forfeited. Furthermore, the taxpayers in *Wood* were not allowed a loss deduction under I.R.C. § 165 because of public policy against drug trafficking. *Id.* at 420.

The Kings rely on the embezzler analogy, citing *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). In *James,* the Supreme Court held that an embezzler who pays taxes on the embezzled money is entitled to a deduction for any amount of the embezzled money repaid to its lawful owner in the year the repayment is made. The Kings wish to receive the same treatment as embezzlers because they returned the drug money *voluntarily.* However, when the taxpayers in *Wood* tried to make the identical argument, the court rejected it, noting that *James* never included a discussion of public policy and that *James* was "irrelevant to a case predicated on drug forfeiture." *Id.* at 421.

This court accepts the analysis set forth in *Wood* that forfeiture is an economic penalty for drug trafficking and that the legislative history of 21 U.S.C. § 881 reveals that forfeiture was "designed to reach drug traffickers 'where it hurts the most ...'" *Id.* at 420. Consequently, the Kings are not entitled to a loss deduction under I.R.C. § 165 and the Government is entitled to summary judgment as to this issue.

## IV.  *Eighth Amendment*

The Kings next argue that if they are not given any tax credit for the $636,940, the Excessive Fines Clause of the Eighth Amendment has been violated. This Court agrees with the Government that payment of taxes, and the denial of any deduction for the forfeited proceeds from illegal drug trafficking cannot be an excessive fine under the Eighth Amendment.

*Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) is distinguishable from the present case because *Austin* dealt with the forfeiture of real property used to facilitate drug transactions, as opposed to proceeds from drug transactions.

Essentially, no authority supports the Kings' view that forfeiture of drug *proceeds* can violate the Excessive Fines Clause of the Eighth Amendment. According to federal drug laws, proceeds from illegal drug trafficking are clearly subject to forfeiture. Furthermore, the Kings agreed to forfeit the $636,940 and used it as part of the plea agreement. This led to a downward departure in Mr. King's sentence. Because the $636,940 in drug proceeds was forfeited in conformity with federal drug statutes, and no cases support the Kings' Eighth Amendment argument, the Government must be granted summary judgment on this issue.

## CONCLUSION

Even taking all of the Kings' statements to be true, there are no genuine issues of material fact, and the Government is entitled to summary judgment as a matter of law. Therefore, the Government's Motion for Summary Judgment (Ct.Rec. 19) is **GRANTED. IT IS FURTHER ORDERED** that the Clerk shall enter a judgment in favor of the Government, **DISMISSING** the Kings' complaint and the claims therein **WITH PREJUDICE.**

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish copies to counsel.