**Albert E. KING; Geraldine King, wife, Plaintiffs–Appellants,**

v.

**UNITED STATES of America; and it's Internal Revenue Service, Defendant–Appellee.**

No. 96–35893.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1997.

Decided Aug. 26, 1998.

Richard P. Algeo, Spokane, Washington, for plaintiffs-appellants.

Thomas J. Clark, Tax Division, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before: GOODWIN, REAVLEY,* and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a tax case involving whether a forfeiture of drug money is deductible.

### Facts.

This case was decided on cross motions for summary judgment, so we set out the facts based on the affidavits and other materials submitted on the motions.

Albert King operated a ranch for his family partnership. He allowed others to grow marijuana on the ranch, and was paid for it. When he got caught, in a raid on the ranch pursuant to a search warrant, he cooperated fully with the government. Ultimately King and the government made a plea bargain pursuant to which King would get a downward departure and serve five years instead of the ten-year statutory mandatory minimum, and forfeit part of the ranch and other property.

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

A major part of the forfeiture was $636,940 in cash. There was a genuine issue of fact about exactly how the government came into physical possession of that money. Because the case was decided against the Kings on summary judgment, we proceed based on the Kings' account of the facts.

After the raid, Mr. King told his lawyer that he had $636,000 in drug money buried in a secret place in a field, and he wanted to turn over the money to the government as part of his full cooperation. His lawyer told the Assistant United States Attorney about it. The government personnel had assumed that King must have money from the drugs stashed away somewhere, but they did not know where. The Kings wanted to assure that the money would go to the Internal Revenue Service, because they anticipated tax liabilities on account of the disclosure of their hidden money. Mr. King's lawyer was anxious about the risk to himself and the money of driving $636,940 in small bills from a rural ranch to Spokane, so he readily acceded to having the FBI pick it up instead.

When the FBI agents came to the King ranch, Mr. and Mrs. King said, while the money was still hidden in a place unknown to the FBI agents, that they wanted the money paid to the IRS, and wanted someone from the IRS to be there to receive it. The FBI agents assured them that they and the IRS worked together frequently, and the FBI would take the money on the IRS's behalf. At dusk, Mr. King took the FBI agents out to the field and dug up the $636,940. The cash was forfeited pursuant to the plea agreement and a stipulation for forfeiture.

None of the criminal aspects of the case are at issue in the case at bar. This is solely a tax case. The Kings had not included the $636,940 in drug money in their reported income. After getting caught, they filed an amended tax return that included the drug proceeds as income, and claimed a credit for the $636,940 given to the FBI. The IRS disallowed the credit, and also refused to allow a deduction for the forfeiture. It assessed a $144,700 deficiency for nonpayment of income taxes on the $636,940. The Kings filed a protest, which was denied. The Kings paid the deficiency, and sued in district court for a refund. The district court granted the government's motion for summary judgment, and we affirm.

### Analysis.

█ The IRS argues that the district court lacked jurisdiction to hear the Kings' claim for refund. Its theory is that because the Kings paid the tax due after rather than before they filed their administrative claim, they did not exhaust their administrative remedy by first properly claiming a refund administratively. Of course the Kings' claim is that they paid the tax twice, first with the forfeited money, and then after their refund claim was denied, a second time with money they borrowed from their children; thus they paid the tax due both before and after they filed their administrative claim for refund. We do not reach the legal issues that might pertain to some other case, though, because in the case at bar, the IRS Appeals Office expressly reached the merits of "your claim for a refund," disallowed it on the merits, and expressly informed the Kings that they were entitled to contest the issue further by filing suit in district court. The district court properly exercised jurisdiction, because this case is analogous to *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir.1979).

█ The Kings concede that illegal income is subject to income tax. They do not put at issue whether they owed income taxes on the $636,940 in drug money, as of the years they obtained the money. Their argument is that because they voluntarily turned the money over to the government to pay their taxes, it was deductible under 26 U.S.C. § 165(a), allowing deductions for "any loss sustained ... and not compensated" incurred in a trade or business or transaction entered into for profit.

The Kings point out that in *James v. United States*, 366 U.S. 213, 220, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), the Supreme Court held that an embezzler is subject to income tax on his unlawful gains in the year obtained, despite his lack of title, but quoted with approval a concession in the government's brief in that case that "[i]f, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income." They also cite

*Ianello v. Commissioner,* 98 T.C. 4728, (1992), but that case holds that any deduction for forfeited money does not relate back to the year the money was obtained, not that the forfeiture was deductible (a question the Tax Court did not have to reach).

The only published circuit court authority we have found on whether forfeiture of drug money entitles the taxpayer to a deduction is *Wood v. United States,* 863 F.2d 417, 421 (5th Cir.1989). *Wood* held that no deduction was allowable, even though the forfeited money was taxable as income when received. The theory in *Wood* was that forfeiture was analogous to state penalties and fines, which are not deductible under *Tank Truck Rentals, Inc. v. Commissioner,* 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958). *Tank Truck* rejected a business deduction for state fines because, by taking some of the sting out of the penalty, deductibility would reduce compliance with state law. *Wood,* applying *Tank Truck,* held that deductibility of forfeited money would take the sting out of drug penalties.

The Kings argue that as a matter of public policy, voluntary disclosure of hidden drug money should be encouraged. We cannot see much force to the involuntary-voluntary distinction the Kings would have us draw between the forfeiture in *Wood* and theirs, because both were part of negotiating favorable treatment in a criminal case with the government. On the other hand, *Wood*'s policy theory is not entirely persuasive, because there is a public policy against embezzlement too. If both kinds of conduct, embezzlement and growing marijuana, were not strongly against public policy, they would not be felonies.

Nevertheless, a distinction may be drawn between *James* and forfeiture because *James* is a three-party relationship, where the restitution is to the third party victim of the embezzlement while drug money is forfeited to the same entity that levies the taxes. Though proper resolution of the case is not without doubt, on this matter of national tax policy there is something to be said for uniformity among the circuits. We are not persuaded that the Kings' argument is so strong as to justify a conflict between Ninth Circuit and Fifth Circuit law.

**AFFIRMED.**