**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1001

EDMAN HACKWORTH; DEBBIE KAY HACKWORTH,

Petitioners - Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

Appeal from the United States Tax Court.  (Tax Ct. No. 02-9786)

Argued:  September 21, 2005          Decided:  November 16, 2005

Before KING and GREGORY, Circuit Judges, and R. Bryan HARWELL, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** William Henry Thomas, III, Greenville, South Carolina, for Appellants.  Randolph L. Hutter, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.  **ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Kenneth L. Greene, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This case arises from the denial by the Commissioner of Internal Revenue of a $152,016 claimed loss deduction under I.R.C. § 165 by Edman and Debbie Kay Hackworth ("taxpayers") on their 1999 income tax return. On February 22, 2002, the Commissioner issued a tax notice of deficiency to the taxpayers. The taxpayers timely filed a petition in the United States Tax Court seeking a redetermination of their liabilities. On July 22, 2004, the Tax Court issued a memorandum opinion and on October 15, 2004, entered a final decision determining tax liabilities and additions to tax against the taxpayers for tax years 1998 and 1999. The taxpayers filed a notice of appeal on December 21, 2004. We affirm.

I.

The Hackworths are citizens and residents of Greenville County, South Carolina. Edman Hackworth owned and operated a bar called the "Sand Trap" in Greenville, South Carolina. In 1997, the Greenville County Sheriff's Office began an investigation into whether the Hackworths were conducting illegal gambling operations in their house and at the Sand Trap. In 1999, the Sheriff's Office began surveillance of the taxpayers' house and the Sand Trap. After several months of surveillance, the Greenville County Sheriff's Office arrested both Edman and Debbie Kay Hackworth and charged them with bookmaking and other gambling offenses. In a

2

search of the taxpayers' residence, the Sheriff's Office discovered a betting room with seven telephone lines, tape-recording devices, two computers, gambling paraphernalia, keys to a safety deposit box, and $63,589 in cash, all of which were seized. At or about the same time, the Sheriff's Office executed a search warrant on the Sand Trap and seized $10,786. On or about September 8, 1999, the Sheriff's Office executed a search warrant on the safety deposit box, located at Carolina First Bank, and seized $90,900 in cash. In total, the Sheriff's Office seized more than $165,000 in cash.

Following the arrest, the Sheriff's Office returned some $13,000 in currency, retaining $152,000 as well as computers and office equipment. On that same date, Edman Hackworth signed a "Consent Forfeiture of Monies Derived from Gambling" in which he agreed "to voluntarily relinquish all rights and ownership" to the remaining $152,016 in order "to avoid litigation." That document also states that he forfeits the money under "[Section] 16-19-80, Code of Laws of South Carolina (1976), as amended."

On or about November 22, 1999, Edman pleaded guilty to "Adventuring in lotteries" in violation of South Carolina Code Annotated § 16-19-20 (1976).[1] He received a citation and paid a

---

[1]Although there is no copy of a plea agreement in the record, appellants' counsel indicated to the Court that the Consent Forfeiture was signed as part of a plea deal.

fine of $125.  The charges against Debbie Kay Hackworth were dismissed.

On October 20, 2000, taxpayers untimely filed their 1999 individual federal income tax return.  On one of the three Schedules C (Profit or Loss From Business) filed with the return, they reported $178,236 in gross receipts from gambling activities, which were referred to as "services" on the tax return.  On that same Schedule C, taxpayers claimed a deduction for "legal and professional services" in the amount of $152,016 with respect to the cash forfeited to the State of South Carolina.

In 2002, the Commissioner of Internal Revenue issued a notice of deficiency to the taxpayers determining, among other things, that taxpayers were not entitled to a deduction in 1999 for $152,016 in cash forfeited to the State of South Carolina. Taxpayers filed a petition in the Tax Court challenging the Commissioner's determinations.  The taxpayers and the Commissioner conceded to several issues so that the only issue remaining for trial was whether taxpayers were entitled to a deduction for the $152,016 that was forfeited to the State of South Carolina. Taxpayers argued that they were entitled to deduct the amount forfeited as a business-related loss under Internal Revenue Code § 165 because it was a loss associated with Edman's gambling enterprise.  The Commissioner argued against the deduction on the basis that allowing such a deduction would frustrate the public

4

policy of the State of South Carolina against illegal gambling. The Tax Court upheld the Commissioner's denial of the deduction and this appeal followed.

## II.

Whether taxpayers are entitled to a deduction for money forfeited to the State of South Carolina is a question of law we review de novo. See Metzger v. Comm'r, 38 F.3d 118, 120 (4th Cir. 1994).

The Hackworths argue that application of the "public policy" doctrine in denying the deduction of funds seized by the Sheriff's Office was erroneous because a civil forfeiture never took place and that the penalty imposed is illegal and by definition is not a "fine," "forfeiture," or "similar penalty" paid "to the government" such that the public policy doctrine should apply. Taxpayers also challenge the Tax Court's determination that, in this case, they are attempting a "collateral attack" on the penalty imposed by the Sheriff's Office. Finally, taxpayers argue that under the facts of this case, to disallow the deduction would run afoul of Congressional intent that only net income be taxed.

Internal Revenue Code § 165(a) provides a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(c) limits the losses deductible by individuals to those losses incurred in a trade or

5

business, those incurred in a transaction entered into for profit, and those caused by fire, storm, shipwreck, theft, or other casualty. The United States Supreme Court has held that rent and wages paid in the operation of bookmaking establishments are deductible as ordinary and necessary business expenses within the meaning of IRC § 23(a)(1)(A) in computing net income for tax purposes, even though the gambling enterprises were illegal under state law. See Comm'r v. Sullivan, 356 U.S. 27 (1958).[2]

A deduction for a state imposed fine or penalty will not be allowed "if the allowance would frustrate sharply defined national or state policies proscribing particular types of conduct, evidenced by some governmental declaration thereof." Tank Truck Rentals, Inc. v. Comm'r, 356 U.S. 30, 33-34 (1958). The Supreme Court has stated that "[d]eduction of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the 'sting' of the penalty prescribed by the state legislature." Id. This "frustration of public policy" doctrine has consistently been applied to preclude tax deductions

---

[2]That Court stated:

> The amounts paid as wages to employees and to the landlord as rent are "ordinary and necessary expenses" in the accepted meaning of the words. That is enough to permit the deduction, unless it is clear that the allowance is a device to avoid the consequence of violations of a law . . . or otherwise contravenes the federal policy expressed in a statute or regulation.

Sullivan, 356 U.S. at 28 (emphasis added).

6

for forfeitures of property to the Government.  See e.g., United States v. Algemene Kunstzijde, N.V., 226 F.2d 115 (4th Cir. 1955). One reason for the disallowance is that "to allow a deduction . . . [for a fine or penalty] would have directly and substantially diluted the actual punishment imposed."  Comm'r v. Tellier, 383 U.S. 687, 694 (1966).  See also Wood v. United States, 863 F.2d 417, 421 (5th Cir. 1989) ("It is obvious . . . that the public policy embodied in this nation's drug laws is not enhanced by allowing a tax deduction to offset a forfeiture.").

South Carolina law provides that "[a]ll and every sum or sums of money staked, betted or pending on the event of any such game or games as aforesaid are hereby declared to be forfeited."  S.C. Code Ann. § 16-19-80 (1976).  The statute permits the forfeiture of property that is "'an integral part of' or 'fruit of' a gambling operation."  South Carolina v. Petty, 241 S.E.2d 561, 562-563 (S.C. 1978).  The Tax Court reasoned that, as a result of these statutes, "South Carolina had a sharply defined policy against illegal gambling in 1999 as expressed in its statutes and enforced by the [Greenville County Sheriff's Office]." (J.A. 190.)  The forfeiture was clearly a part of South Carolina's enforcement of its public policy against illegal gambling.  Appellants do not contest that the State of South Carolina has such a policy.

Appellants argue that the forfeiture was invalid and, therefore, the deduction cannot be denied on the grounds of public

7

policy. The Tax Court observed that, by questioning the validity of the forfeiture, the Hackworths were attempting to collaterally attack the forfeiture, a matter which the Tax Court had no jurisdiction to hear. Appellants argue that their deduction was proper because no proper civil forfeiture took place under South Carolina law. Rather, they argue that the alleged property has been illegally retained by the Greenville County Sheriff's Office and that the illegal retention of the monies is not a government sanctioned penalty under state law. However, Edman Hackworth voluntarily signed a form entitled "Consent Forfeiture of Monies Derived from Gambling" which stated that the $152,016 had been seized as a result of Edman's arrest for violation of the South Carolina gambling statutes. (J.A. 279.) The Consent further stated that the parties were entering into "a compromise settlement to avoid litigation" and that the $152,016 seized was being forfeited pursuant to South Carolina Code § 16-19-80.

Taxpayers argue that the consent form is "incomplete" and, consequently, ineffective, because it is not signed in the space provided for an assistant solicitor or a judge to sign. However, they have not provided any legal authority to demonstrate that Edman Hackworth's signature, along with his conviction for adventuring in lotteries, is insufficient to effect a consent to forfeiture. Before the Tax Court, Lieutenant Robert L. Gillespie, with the Greenville County Sheriff's Office, testified that he

8

understood the consent to be effective upon conviction without a judge's signature. (J.A. 155.) While the taxpayers assert that this is only Gillespie's interpretation of the law, they point to no legal authority that would render his understanding of the law to be erroneous.

Appellants argue that no forfeiture took place because no in rem action took place. See Ducworth v. Neely, 459 S.E.2d 896, 899 (S.C. Ct. App. 1995) (an action for forfeiture is an action in rem against the property itself ). Relying on Petty, 241 S.E.2d 561, they assert that an in rem action was necessary to determine, among other things, whether Edman's consent was knowledgeable. However, that case does not discuss a situation where, as here, there was a consent forfeiture.[3] Importantly, in the instant case, the Consent provides that it is a "compromise settlement" entered into for the express purpose of "avoid[ing] litigation."

Appellants also rely on the case of Moore v. Timmerman, 276 S.E.2d 290 (S.C. 1981), which they characterize as a case that requires a forfeiture hearing to be held even where the statute in

---

[3]In that case, pursuant to a search warrant, SLED agents found and seized cash and checks totally $23,549.58, in the same room where gambling paraphernalia was discovered. Petty pled guilty to South Carolina Code § 52-15-10 and the State subsequently petitioned to have the seized monies and checks forfeited to the state pursuant to South Carolina Code § 16-19-80. Petty appealed the forfeiture on the grounds that the evidence was insufficient to support a finding that the monies and checks found were "staked, betted or pending" within in the meaning of § 16-19-80 in that there was no direct showing that the money was involved in gambling. Petty, 241 S.E.2d at 562.

9

question provides for an automatic forfeiture.[4] In that case, the South Carolina Supreme Court determined that the criminal defendant was charged with hunting deer at night and the criminal trial provided the due process necessary to support the statutory forfeiture of the guns in his possession at the time of his arrest. Id. at 292. The South Carolina Supreme Court held that the only hearing required, when there is an automatic forfeiture, is one to allow an innocent third party claiming an interest in one of the forfeited guns to be heard. Id. at 292-293. In the instant case, there is no third party claiming an interest in the monies forfeited and, consequently, Moore is inapplicable. The taxpayers have presented this Court with no legal authority to support their argument that a consent to forfeiture does not permit the State to forego an in rem proceeding when that consent specifically states that it is signed to "avoid litigation."

Appellants also argue that, shortly before the trial before the Tax Court, Edman "revoked" his consent to the forfeiture. Appellants have failed to address whether the attempt to revoke his consent, long after the forfeiture had been completed, could have any legal effect. Regardless, the Tax Court found the argument

---

[4]Appellants concede that there are South Carolina decisions that have found an automatic forfeiture upon conviction of a crime or from the possession of contraband, but assert that those cases were not pursuant to the gambling statute used in the instant case. See Ducworth, 459 S.E.2d 896; South Carolina v. Coin-Op. Video Game Mach., 525 S.E.2d 872 (S.C. 2000).

10

that Edman revoked his consent to forfeiture to be "uncorroborated and unpersuasive."  This Court defers to a trier of fact on a question of credibility.  McCrary v. Runyon, 515 F.2d 1082, 1086 (4th Cir. 1975); see also Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985).

Appellee asserts, and the Tax Court agreed, that appellants are attempting to collaterally attack the forfeiture of the gambling funds.  Appellants contend that they are not attacking whether the funds should be retained by the Greenville County Sheriff's Office, an issue they concede is not within the Tax Court's jurisdiction.  Rather, appellants assert that the issue is whether a deduction should be allowed as a business loss.  Appellee asserts that whether or not the forfeiture was valid under South Carolina law is an issue between the taxpayers and the Greenville County Sheriff's Office.  This Court agrees.  If the taxpayers believe that the forfeiture was invalid, the proper remedy is for them to sue the Greenville County Sheriff's Office and seek return of the funds.  Appellants' counsel indicated at oral argument that the taxpayers were, in fact, now trying to challenge the forfeiture in the South Carolina state courts, but that such challenge may prove to be untimely.  Regardless of whether that action is timely, the Tax Court has no jurisdiction to determine whether a forfeiture was valid or invalid and until it is determined to be invalid the retention of the $152,016 by the Greenville County Sheriff's Office

11

is a "forfeiture" paid "to the government" rather than a "business loss" (as appellants now argue) or payment for "legal and professional services" (as they claimed on their Schedule C).

Appellants argue that the result in this case violates the "principle" that only net income should be subjected to tax. A taxpayer generally is not taxed on the gross income of his business, but rather is allowed to deduct the ordinary and necessary business expenses that are incurred. See I.R.C. § 162.[5] Appellants argue that they should be able to deduct the monies retained by the Greenville County Sheriff's Office for "reasons analogous to a theft or casualty loss." The appellants point out that the United States Supreme Court has allowed a gambler to deduct business expenses or losses. See Sullivan, 356 U.S. 27. While the Court in Sullivan specifically acknowledged that a deduction for "ordinary and necessary expenses" will ordinarily be permitted, such a deduction will not be permitted if "the allowance is a device to avoid the consequence of violations of a law." Id. at 28. The taxpayers in Sullivan were seeking a deduction for wages and rent, not for the forfeiture of funds as in the instant case. Such a deduction would run contrary to the public policy and laws of the State of South Carolina.

---

[5]As discussed above, appellants are seeking a deduction under § 165 rather than § 162.

12

We are of opinion the Tax Court correctly decided, as a matter of public policy, that the Hackworths are not entitled to a deduction for the $152,016 forfeited to the Greenville County Sheriff's Office.  The judgment of the Tax Court is accordingly

AFFIRMED.